**FLORIDA EVERGREEN FOLIAGE and Louis Chang, Plaintiffs,**

v.

**E.I. DUPONT DE NEMOURS AND COMPANY, a Delaware corporation, Defendant.**

Nos. 98–2242–CIV, 98–2242–CIV.

United States District Court, S.D. Florida.

July 26, 2004.

■■■■■

Stephens Clay, Esq., James F. Bogan, III, Esq., William H. Boice, Esq., Kilpatrick & Stockton, LLP, Atlanta, GA.

Alice G. Hector, Esq., Lance A. Harke, Esq., Hector & Harke, LLP, Miami, FL.

Edward A. Moss, Esq., Thomas E. Scott, Esq., Shook, Hardy & Bacon, LLP, Miami, FL.

A. Camden Lewis, Esq., Mary G. Lewis, Esq., Thomas A. Pendarvis, Esq., Lewis, Babcock & Hawkins, Columbia, SC.

L. Sean Moore, Esq., Ft. Lauderdale, FL.

Stephen T. Cox, Esq., David W. Moyer, Molligan Cox & Moyer, San Francisco, CA.

Chan P. Townsley, Esq., Hutton & Hutton, Wichita, KS.

Thomas W. Curvin, Esq., Sutherland, Asbill & Brennan, Atlanta, GA.

John M. Brumbaugh, Esq., Richard Greer Weil Brumbaugh, Mirabito & Christensen, P.A., Miami, FL.

Daniel W. Sigelman, Esq., Kellogg, Saccoccia & Sigelman, Washington, DC.

Sheehe & Venditelli, P.A., Miami.

Jack Scarola, Esq., David Sales, Esq., Searcy Denney Scarola Barnhart & Shipley, PA, West Palm Beach, FL.

James Ferraro, Esq., Lynn M. Holtzman, Esq., Ferraro & Associates, PA, Miami, FL.

Carl H. Osaki, Honolulu, HI.

Adam P. Schwartz, Esq., Zuckerman, Spaeder, Taylor & Evans, Tampa, FL, Gil A. Haddad, Esq., Coral Gables.

Kris A. LaGuire, Esq., Hilo, HI.

Melvin Y. Agena, Esq., Law Offices of Melvin Y. Agena, Honolulu, HI.

## *OMNIBUS ORDER*

GOLD, District Judge.

This Cause is before the Court upon the following motions: (1) Motion to Amend (DE # s 406, 407)[1] filed on November 10, 2003 and the Corrigenda to the Motion to Amend (DE # 409) filed on December 1, 2003 by Plaintiffs in Case Nos. 98–2242, 98–2243, 98–2244, 98–2245, 98–2246, 98–2247, 98–2248, 98–2249, 98–2254, 99–0336, 99–2307, 99–2308, 99–2309, 99–2310, 00–2771, 00–2772, and 00–2773 (collectively "Plaintiff–Growers"[2]), (2) the Motion to Amend (Case No. 97–0059,[3] DE # 325)

---

**1.** Unless specifically noted, all docket entry numbers refer to the entries in the lead case, Case No. 98–2242.

**2.** The term "Plaintiff–Growers" shall also include Plaintiffs in 98–2256. In that specific case, I denied a Motion to Amend. *Florida Evergreen Foliage v. E.I. DuPont De Nemours & Co.,* 165 F.Supp.2d. 1345 (S.D.Fla.2001) ("*Florida Evergeen II*"), aff'd, *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.,* 341 F.3d 1292 (11th Cir.2003) ("*Green Leaf*"). Although the Plaintiffs in Case No. 99–2256 do not join the Motion to Amend, the Plaintiffs in 98–2256 join Plaintiff–Growers' other Motions which are discussed in this Order.

**3.** Case Nos. 97–0062 and 97–0063 were previously consolidated with Case No. 97–0059 (Case No. 97–0059, DE # 47, filed October 5, 2000) and administratively closed. Subsequently, the parties filed a joint Stipulation of Dismissal (Case No. 97–59, DE # 345, filed May 3, 2004) in the consolidated case, which was granted (Case No. 97–59, DE # 347, filed May 6, 2004). The Stipulation, and consequently, the Order Granting the Stipulation, did not specify that the dismissal was with respect to all Plaintiffs in the consolidated case except Mazzoni Farms and Jack Martin Greenhouses, formerly Plaintiffs in Case Nos. 97–0062 and 97–0063, respectively. These Plaintiffs are the only Ferraro Plaintiffs remaining in this action.

filed on March 9, 2004 by Plaintiff Mazzoni Farms (former Case No. 97–0062) and Plaintiff Jack Martin Greenhouses (former Case No. 97–0063) (collectively "Ferraro Plaintiffs"), (3) DuPont's Motion for Summary Judgment (DE # 416, filed January 13, 2004) dismissing with prejudice all settlement fraud claims and defenses, (4) DuPont's Motion for Summary Judgment (DE # 418, filed January 13, 2004) on issue of breach of settlement agreement, (5) Plaintiff–Growers' Cross–Motion for Summary Judgment (DE # 445, filed April 20, 2004), (6) Ferraro Plaintiffs' Cross–Motion and Memorandum of Law in Support of Summary Judgment (DE # s 453, 454, filed April 21, 2004) dismissing DuPont's counterclaims, (7) Searcy Denney Growers' Cross–Motion for Summary Judgment (DE # 436, filed April 19, 2004), (8) the Motions to Dismiss and Memoranda of Law in Support of Motion to Dismiss (Case No. 99–7217, DE # s 345, 346; Case No. 99–7228, DE # s 344, 345; Case No. 99–7229, DE # s 344, 345) filed on January 27, 2004 by the Defendants in Case Nos. 99–7217, 99–7228, 99–7229 (collectively "Ferraro Defendants")[4], (9) the Motion to Amend Answer (Case No. 99–7038, DE # 432) filed on March 8, 2004 by the Plaintiffs in Case Nos. 99–7038, 99–7039, 99–7040, 99–7041, 99–7042, 99–7043 (collectively "Searcy Denney Growers" or "Searcy Denney"), and (10) DuPont's Motion for Summary Judgment against Defendant DeLuca International, Inc. ("DeLuca")[5] (Case No. 99–7217, DE # 366, filed April 12, 2004). United States Magistrate Judge Andrea M. Simonton held a case management conference on February 18, 2004 and subsequently issued a Report Re: Case Management Conference ("Report") (DE # 444, filed March 26, 2004) which set forth a schedule making the aforementioned Motions ripe by June 4, 2004. Oral Argument regarding these Motions was held on June 25, 2004.[6] Upon review of the parties' arguments, the record, applicable statutes, and case law, the Motions to Amend the Complaints are DENIED, DuPont's Motion for Summary Judgment as to the settlement fraud claims is GRANTED, DuPont's Motion for Summary Judgment as to breach of settlement is DENIED, the Growers' Cross–Motions for Summary Judgment is GRANTED, and Ferraro Defendants' Motion to Dismiss is GRANTED. Accordingly, these cases are CLOSED, and the remaining Motions are DENIED AS MOOT. Because this Omnibus Order involves several pending matters in twenty-nine different cases, I have attached as Appendix I a table of contents outlining the Order.

## BACKGROUND

I described the background of these cases in my previous Orders in Case No. 98–2256, and those Orders are incorporated herein by reference. *Florida Evergreen Foliage v. E.I. Du Pont De Nemours & Co.*, 135 F.Supp.2d. 1271 (S.D.Fla. 2001) ("*Florida Evergeen I*"), aff'd, *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292 (11th Cir.2003)

---

**4.** The term "Ferraro Defendants" refers to the remaining growers in Case No. 99–7217 and all the growers in Case Nos. 99–7228 and 99–7229. Several of the growers in Case No. 99–7217, known as Crawford Claimants, were in a different factual situation than the other growers in the case. Four of these Crawford Claimants recently settled with DuPont. (Orders Granting Dismissal with Prejudice, Case No. 99–7217, DE # s 406–409, filed June 29, 2004). Thus, the following growers are not included in these pending motions: Carter Exotics, Inc., 29 Palms, Southland Nurseries, Inc., and Beverley Farms, Inc.

**5.** DeLuca is one of the Ferraro Defendants in Case No. 99–7217.

**6.** I will use the following designation to cite to the oral argument transcript: "Transcript at" followed by the page number.

("*Green Leaf*"); *Florida Evergreen Foliage v. E.I. DuPont De Nemours & Co.,* 165 F.Supp.2d. 1345 (S.D.Fla.2001) ("*Florida Evergreen II*"), *aff'd, Green Leaf Nursery v. E.I. DuPont De Nemours & Co.,* 341 F.3d 1292 (11th Cir.2003). This Background also recites from the Eleventh Circuit's decision *Green Leaf* affirming those Orders. After discussing these previous decisions, I will discuss the pending claims regarding the different sets of growers. Finally, I will briefly summarize portions of oral argument during which the parties provided me with further background regarding the matters that are essentially at issue in this case.

## I. *Florida Evergreen I and II and Green Leaf*

In *Florida Evergreen I* and *II* and in *Green Leaf,* DuPont moved for judgment on the pleadings against Plaintiffs in Case No. 98–2256. Plaintiffs' claims arise out of a prior lawsuit filed in Florida state court in 1992, in which Plaintiffs alleged products liability based on property damage caused by DuPont's fungicide Benlate and actual fraud claims based on DuPont's alleged concealment of Benlate's defects (the "Underlying Lawsuit"). In 1994, Plaintiffs settled these underlying claims and eventually dismissed their lawsuit with prejudice.

Plaintiffs in Case No. 98–2256 then filed the instant action, alleging that during the course of the litigation of the Underlying Lawsuit, DuPont wrongfully, illegally, and fraudulently withheld from discovery vital scientific data and information that DuPont was under an obligation to produce in the Underlying Lawsuit and in other related Benlate litigation being conducted simultaneously in other courts, which Plaintiffs' attorneys were monitoring, and gave false testimony in other Benlate cases about Benlate's alleged defects. Plaintiffs alleged that DuPont withheld the information and made false statements in the implementation of a scheme to defraud Plaintiffs and others who had used Benlate and suffered resulting damage. As a result of the scheme and fraud, Plaintiffs alleged that they were induced to settle the Underlying Lawsuit for less money than they would have otherwise insisted upon and been able to obtain.

Although Plaintiffs accepted and kept the settlement monies, affirming the settlement agreement, they filed an action against DuPont alleging the following thirteen claims for relief: (1) fraud, (2) intentional nondisclosure of material facts, (3) fraudulent inducement to settle, (4) fraud on the court under Federal Rule of Civil Procedure 60(b), (5) rescission and damages for fraud, (6) racketeering in violation of 18 U.S.C. § 1962(c), (7) violation of 18 U.S.C. § 1962(d) by conspiracy to violate 18 U.S.C. § 1962(c), (8) conspiracy, (9) abuse of process, (10) infliction of emotional distress, (11) interference with prospective economic advantage, (12) spoliation of evidence, and (13) violation of the Florida Deceptive and Unfair Trade Practices Act. I dismissed these claims in two orders and entered judgment in favor of DuPont. I also denied Plaintiffs' Motion to Amend the Complaint and denied the remaining Plaintiff–Growers' Motions to Amend without Prejudice. Plaintiffs in Case No. 98–2256 appealed the two Orders separately. The Eleventh Circuit consolidated the appeals and affirmed my Orders.

## II. Pending Motions

The Motions that are pending before me involve five sets of growers: (1) Plaintiff–Growers, (2) Ferraro Plaintiffs, (3) Searcy Denney Growers, and (4) the Ferraro Defendants. I will discuss each set of growers.

## A. Plaintiff–Growers: Background and Pending Motions

With the exception of Plaintiff–Growers

who filed their complaints in 2000 [7], Plaintiff–Growers' First Amended Complaint contains thirteen claims for relief: (1) fraud, (2) intentional nondisclosure of material facts, (3) fraudulent inducement to settle, (4) fraud on the court under Federal Rule of Civil Procedure 60(b), (5) rescission and damages for fraud, (6) racketeering in violation of 18 U.S.C. § 1962(c), (7) violation of 18 U.S.C. § 1962(d) by conspiracy to violate 18 U.S.C. § 1962(c), (8) conspiracy, (9) abuse of process, (10) infliction of emotional distress, (11) interference with prospective economic advantage, (12) spoliation of evidence and (13) violation of the Florida Deceptive and Unfair Trade Practices Act. (Report at 8). DuPont has filed its Answers and Counterclaims against all grower Plaintiffs, asserting claims for breach of the settlement agreement, specific performance, injunctive relief, reformation, and restitution.[8] (*Id.*). Plaintiff–Growers have raised numerous defenses and affirmative defenses to the Counterclaims, including res judicata, collateral estoppel, unclean hands, fraud, failure to perform excused by DuPont's breach, waiver, estoppel, and unconscionability. (Report at 8–9).

All cases, except Case No. 98–2256,[9] have pending motions for leave to file a proposed Second Amended Complaint. (*Id.*). Prior to a status conference before me on January 30, 2004, DuPont filed an initial memorandum in opposition to these motions. (*Id.*) Thereafter, pursuant to the direction received at that status conference, DuPont sought and was granted leave to file a supplemental response which would fully address the merits of the proposed Second Amended Complaint, addressing all issues which would be raised in a Motion to Dismiss if the Amended Complaint were permitted. (*Id.*).

DuPont has filed Motions for Summary Judgment against Plaintiff–Growers regarding its breach of settlement counterclaim and the settlement fraud claims.[10] (*Id.*). Plaintiff–Growers assert a Cross–Motion for Summary Judgment.

## B. Ferraro Plaintiffs: Background and Pending Motions

Mazzoni Farms and Jack Martin Greenhouses are the only Plaintiffs remaining from the seven cases that were filed in 1997. These cases were initially filed in state court against DuPont, and were then removed to this Court. (Report at 5). Plaintiffs filed one-count Complaints alleging fraud in connection with the settlement of their underlying claims with DuPont (*Id.*). DuPont answered these Complaints, and DuPont filed a two-count counterclaim for breach of the settlement agreement and restitution. (*Id.*). Plaintiffs replied, asserting that the counterclaims are barred by fraud, fraud in the inducement, misrepresentation, failure to bargain in

---

7. These Plaintiff–Growers, in Case Nos. 00–2771, 00–2772, and 00–2773, allege twelve counts. They omit the infliction of emotional distress claim.

8. DuPont stated during oral argument that it is no longer seeking the equitable forms of relief; rather, it only asserts its breach of settlement claim against the growers. (Transcript at 5).

9. This is the case in which I previously granted the motions for judgment on the pleadings, and denied the motion for leave to amend. DuPont's counterclaim for breach of settlement is still pending in this case.

10. In her Report, Magistrate Judge Simonton noted that there is no motion to amend DuPont's counterclaims in these cases, which include claims for relief which were eliminated by the Amended Complaints filed by DuPont in the cases where Du Pont is the plaintiff against growers who filed their Complaints in state court. (Report at 9). Du Pont abandoned its equitable claims during oral argument. (Transcript at 5).

good faith and duress in formation of the settlement. (*Id.*).

Plaintiffs seek to amend their complaints. DuPont has filed Motions for Summary Judgment regarding breach of the settlement agreement and fraud in these cases. Ferraro Plaintiffs assert their own Cross–Motion for Summary Judgment.

## C. Searcy Denney Growers: Background and Pending Motions

In the remaining cases, DuPont has filed First Amended Complaints which contain two counts alleging Breach of Settlement Agreement (Count 1) and Restitution (Count 2). (Report at 11). The defendants in these cases are growers who have filed cases in state court similar to the complaints pending in federal court in the groups described above. (*Id.*). These growers were all represented by the Malone firm in their underlying lawsuits. (*Id.*).

Searcy Denney Growers have filed Answers which raise the following defenses: this matter should be stayed pending resolution of the state cases; there was no release of these claims; there was no contemplation or consideration of release of these claims; there is no cognizable claim for restitution, and estoppel prevents these claims. (*Id.*). Counsel for the Searcy Denney Growers specifically advised Magistrate Judge Simonton that there is no fraud defense asserted, nor does he intend to assert one. (*Id.* at 11–12).

The following motions are pending with respect to these growers. Searcy Denney has filed a Motion to Amend Answer. DuPont's Motion for Summary Judgment regarding breach of settlement is pending. There is no fraud defense raised in any of these cases, and therefore the parties agree that DuPont's motion for summary judgment regarding fraud claims and defenses does not pertain to any of these growers. (*Id.*). Searcy Denney has filed a Cross–Motion for Summary Judgment.

## D. Ferraro Defendants: Background and Pending Motions

The last group consists of three cases in which the defendant growers are represented by the Ferraro law firm: Case Nos. 99–7217, 99–7228, and 99–7229. Ferraro Defendants have not yet filed answers to DuPont's Complaints, but have filed Motions to Dismiss. DuPont's Motion for Summary Judgment based on breach of settlement is pending with respect to the above cases. Due to the pendency of the Motions to Dismiss, Ferraro Defendants have not asserted a fraud defense in these cases. Accordingly, DuPont agrees that its Motion for Summary Judgment as to fraud defenses does not pertain to these cases. (Report at 13). If the motions to dismiss are denied, however, and a fraud-based defense is asserted, then DuPont intends to file such a motion. (*Id.*).

## III. Oral Argument

I will briefly review the portions of oral argument during which the parties provided further background of these cases and discussed the matters that are essentially at issue here. I will refer to relevant sections of DuPont's Post–Hearing Brief (DE # 471, filed July 2, 2004, at Exh. B) as I summarize the June 25, 2004 oral argument.

Oral argument began with the issue of damages. I asked DuPont to specify what damages it seeks with regards to its breach of contract and equitable claims. DuPont responded by abandoning its equitable claims. It explained that it is not proceeding on these claims, such as restitution, which would request that I exercise my equitable power to refund to DuPont the amount paid to the growers pursuant to the settlement agreements. (Transcript

at 5). This approach would have required that Growers return the money that they received for agreeing to cease the underlying actions against DuPont.

Because DuPont has abandoned its equitable claims, its only remaining claim, and in some cases, counterclaim, is for breach of settlement. DuPont stated that if it were to win on this claim, and the issue of damages proceeded to trial, DuPont would forego any right to recover damages beyond nominal compensatory damages from a jury. (Transcript at 9; DuPont's Motion for Leave to File Post–Hearing Brief, DE # 471, filed July 2, 2004, at ¶ 2). DuPont further explained that in the event Growers continued asserting state court claims despite a judgment granting the Motion for Summary Judgement as to breach of settlement, DuPont would seek a "relitigation injunction" from me, enjoining growers from pursuing parallel Florida state court cases. (*Id.*).

I questioned DuPont regarding its course of action if its Motion for Summary Judgment as to breach of settlement is denied. (Transcript at 9–12). DuPont acknowledged that if its Motion were denied, the individual growers' cases would each proceed to trial. During this trial, the growers would necessarily present evidence of DuPont's alleged fraud and misconduct in order to explain that their fraudulent inducement claims were not unfounded. DuPont, in turn, would present evidence that it was accused of committing fraud during the underlying action in order to show that the growers contemplated fraud claims before or during settlement.[11] These trials would involve numerous questions of material fact for each grower that a jury would have to resolve in order to determine whether each grower breached the settlement agreements.

If the jury decided for DuPont on the issue of breach, the jury would then have to determine damages. DuPont would already be entitled to litigation costs as the prevailing party, and if the issue of attorney's fees were to be resolved upon a post-trial motion before me, the only type of damages left for the jury to consider would be compensatory damages. (Transcript at 8–9). DuPont stated during oral argument that it is not actually seeking compensatory damages from the jury. (Transcript at 10–11). Rather, it would only seek one dollar of compensatory damages from the jury, so that it could proceed to seek attorney's fees post-trial from me. (Transcript at 10–11). Dupont admitted that in the event the jury grants nominal compensatory damages despite hearing evidence of DuPont's alleged fraud and misconduct, and the issue of attorney's fees proceeds before me, in addressing this issue I would be able to consider that the Eleventh Circuit "do[es] not sanction DuPont's alleged conduct and note[s] that other penalties exist for such dishonest actions." (Transcript at 11–12 (citing *Green Leaf,* 341 F.3d at 1310)).

DuPont later argued, however, that pursuant to the Federal Rules of Civil Procedure and the language of the settlement agreements, I would not be permitted to determine the amount of attorney's fees. (Transcript at 92–93). Federal Rule 54(d)(2)(A) provides, "Claims for attorneys' fees and related nontaxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial." DuPont argues that it is seeking attorney's fees as an element of compensatory damages for breach of contract. The contract, or the

---

11. *See infra* Part III.A, which analyzes DuPont's argument that under Delaware law, if the growers actually contemplated fraud claims during settlement, they released fraud claims in the release provision of the settlement agreement.

settlement agreement, provides for attorneys' fees in paragraph six of the typical[12] release. (*See* Second Declaration of Ronald L. Raider Part I, DE #427, filed January 13, 2003, at Release, Indemnity and Assignment ¶6). Paragraph 6 explains that a breach of the release would entitle DuPont to recover not only the amount of any judgment which may be awarded, "but also court costs, attorney's fees, and all other costs and expenses, taxable or otherwise ...." (*Id.*). Thus, concludes DuPont, the jury would determine whether to award attorney's fees rather than me.

I am not ruling on who determines the amount of attorneys' fees. The parties did not fully brief this issue, and it is not relevant to my ruling. I am merely explaining that a jury would necessarily hear evidence regarding DuPont's alleged misconduct before being able to determine what, if any, damages DuPont would receive. I am further explaining that if a motion for attorneys' fees were before me in the future, I would be permitted to consider this evidence, particularly in light of the Eleventh Circuit's disapproval of DuPont's alleged misconduct, if proven. As I explain in Part III, *infra*, however, I conclude that the contract has not been breached, so the issue of attorney's fees will not be before the jury or me in the future.

## LEGAL STANDARD

The following types of Motions are discussed in this Order: (1) Motions to Amend, (2) Motions for Summary Judgment, and (3) Motions to Dismiss. Accordingly, I will review the standards that govern each type of Motion.

## I. Motions to Amend

■ When the time period for filing an amendment of a pleading as of right has expired, Rule 15(a) of the Federal Rules of Civil Procedure requires that amendment may be provided "only by leave of court or by written consent of the adverse party." Fed.R.Civ.P. 15(a). Rule 15(a) states that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The Eleventh Circuit has held that motions for leave to amend complaints should be liberally granted when necessary in the interests of justice. *See Jennings v. BIC Corp.*, 181 F.3d 1250, 1258 (11th Cir.1999) (stating that "leave to amend should be liberally granted when necessary in the interest of justice" under Fed.R.Civ.P. 15(a)); *Florida Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir.1996) ("Unless substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial."), *citing Shipner v. Eastern Air Lines, Inc.*, 868 F.2d 401, 407 (11th Cir.1989).

## II. Motions for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court's

---

12. In its Concise Statement of Material Facts (DE #42, filed January 13, 2004), DuPont explains that the settlement contracts for each grower contain minor differences, but the key provisions are materially the same. (*Id.* at ¶46). DuPont states that the contracts executed by growers who were represented by Malone and the Malone firm are typical of all the contracts. (*Id.*). Accordingly, it refers to the one of these contracts, *see* Second Raider Dec., Exh. 7, as the "Exemplar Settlement Contract." (*Id.*). Unless I indicate otherwise, I am referring to this Exemplar Settlement Contract and its provisions whenever I discuss a particular settlement contract.

focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997). The moving party has the burden to establish the absence of a genuine issue as to any material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Tyson Foods, Inc.,* 121 F.3d at 646. Once the moving party has established the absence of a genuine issue of material fact, to which the nonmoving party bears the burden at trial, it is up to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Issues of fact are genuine only if a reasonable jury, considering the evidence presented could find for the nonmoving party. *See Anderson,* 477 U.S. at 247–51, 106 S.Ct. at 2510–11. In determining whether to grant summary judgment, the district court must remember that, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* 477 U.S. at 255, 106 S.Ct. at 2513.

## III. Motions to Dismiss

The Ferraro Defendants in Case No. 99–7217 have moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). The Ferraro Defendants in Case Nos. 99–7228 and 99–7228 have raised virtually identical arguments for dismissal pursuant to Rule 12(b)(6) and have also argued that venue is improper.

■ To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Rendon v. Valleycrest Prods.,* 294 F.3d 1279, 1282 (11th Cir.2002) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)), *reh'g denied,* 54 Fed. Appx. 493 (11th Cir.2002). Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Hoffend v. Villa,* 261 F.3d 1148, 1150 (11th Cir.2001) (citation omitted), *cert. denied,* 535 U.S. 1112, 122 S.Ct. 2328, 153 L.Ed.2d 159 (2002).

"[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the complaint should not be dismissed on grounds that it fails to state a claim upon which relief can be granted. *Beck v. Deloitte & Touche,* 144 F.3d 732, 736 (11th Cir.1998) (citation omitted), *reh'g denied,* 189 F.3d 487 (11th Cir.1999). Nevertheless, "to survive a motion to dismiss, [a] plaintiff must do more than merely label his claims." *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.,* 208 F.Supp.2d 1310, 1313 (S.D.Fla.2002) (citation omitted). Moreover, when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. *Id., citing Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993).

28 U.S.C. § 1391(a) governs venue in civil actions where jurisdiction is founded only on diversity of citizenship. These types of actions may be brought in the following courts:

(1) a judicial district where any defendant resides, if all defendants reside in the same State; (2) a judicial district in which a substantial part of the events or

omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced.

28 U.S.C. § 1391(a).

## ANALYSIS

Applying these well-established principles to these cases leads me to (1) deny the Motions to Amend the Complaints, (2) grant DuPont's Motion for Summary Judgment as to all fraud claims, (3) deny DuPont's Motion for Summary Judgment as to breach of settlement and grant the Cross–Motions for Summary Judgment against DuPont, (4) grant Ferraro Defendants' Motions to Dismiss, and (5) deny as moot any remaining motions and close this case.

## I. Plaintiff–Growers' and Ferraro Plaintiffs' Motions to Amend

Plaintiff–Growers' and Ferraro Plaintiffs' Motions to Amend seek to file virtually identical proposed Second Amended Complaints. (*See* Plaintiff–Growers' Corrigenda to the Motion to Amend, DE #409, filed December 1, 2003, at Exhs. 5, 6; Ferraro Plaintiffs' Motion to Amend First Amended Complaint, Case No. 97–0059, DE #329, filed March 9, 2004, at Exh. 5). I must examine these Motions before resolving other matters in this consolidated action because if the Motions are granted, Plaintiff–Growers and Ferraro Plaintiffs will have a new set of claims which may moot or change my analysis of

other pending motions, such as DuPont's Motion for Summary Judgment as to all existing claims. As I explain in this section, however, I am denying the Motions to Amend, and accordingly, the remaining pending motions will not be affected.

## A. Plaintiff–Growers' Motion to Amend

Plaintiff–Growers filed a Motion to Amend (Case No. 98–2242, DE #406, filed November 10, 2003) and a Corrigenda to the Motion to Amend (DE #409, filed December 1, 2003). DuPont filed its Opposition (DE #415, filed January 6, 2004). At a status conference held before me on January 30, 2004, DuPont was instructed to include in its opposition any arguments it would make in a motion to dismiss the proposed amended complaints. Accordingly, DuPont filed a Supplemental Opposition (DE #442, filed March 12, 2004). Plaintiff–Growers filed their Reply to DuPont's Memorandum and Supplemental Memorandum in Opposition to Plaintiff–Growers' Motion to Amend Complaints (DE #447, filed April 20, 2004). DuPont was ordered to file a Sur–Reply (Order, DE #468, filed June 9, 2004), and it did so on June 18, 2004 (Sur–Reply, DE #469).

Plaintiff–Growers have submitted a proposed Second Amended Complaint for the Plaintiff–Growers represented in the underlying lawsuit by Kevin A. Malone, Esq. (Corrigenda to Plaintiffs' Memorandum at Exhibit 5 ¶20) and a proposed Second Amended Complaint for the Plaintiff–Growers represented in the underlying lawsuit by the law firm of Sheehe & Vendittelli (*Id.* at Exhibit 6 ¶20).[13] Both pro-

---

**13.** The Malone law firm represented the Plaintiff–Growers in the underlying litigation in Case Nos. 00–2771; 00–2772; and 00–2773; the Malone firm and the Broad & Cassel firm represented the Plaintiff–Growers in the underlying litigation in Case Nos. 99–2307 and 99–2309; the Sheehe law firm represented the Plaintiff–Growers in the underlying litigation in Case Nos. 98–2242; 98–2243; 98–2244; 98–2245; 98–2246; 98–2247; 98–2248; 98–2249; 98–2254; 98–2256; 99–0336; the Peterson, Myers law firm represented the Plaintiff–Growers in the underlying litigation in Case No. 99–2308; and the Goldman, Antonetti law firm represented the

posed Second Amended Complaints assert the same eleven causes of action: (1) Count I for Florida Civil Remedies for Criminal Practices ("Florida civil RICO" or "Florida RICO") violations, (2) Count II for conspiring to violate Florida civil RICO, (3) Count III for fraudulent concealment, (4) Count IV for intentional nondisclosure of a material fact, (5) Count V for fraudulent inducement to settle, (6) Count VI for fraud on the court in an independent action, (7) Count VII for civil conspiracy, (8) Count VIII for abuse of process, (9) Count IX for spoliation of evidence, (10) Count X for federal racketeering violations, and (11) Count XI for conspiracy to violate 18 U.S.C. Section 1962(c). With the exception of the two Florida RICO claims, these claims are essentially the same claims on which judgement has been entered for DuPont in Case No. 98–2256. Plaintiffs fail to explain why these proposed claims could not have been alleged when these actions were filed in 1998, 1999, and 2000, or why these claims are viable despite the rulings in Case No. 98–2256. Based upon my own review, I deny the Motion to Amend as untimely and futile.

*(1) Timeliness*

■ A district court may exercise its discretion to deny a motion for leave to amend for "any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see also Maynard v. Board of Re-*

gents of the Division of Universities of the Florida Dep't of Education, 342 F.3d 1281, 1287 (11th Cir.2003) ("Although leave to amend shall be freely given when justice so requires, a motion to amend may be denied on numerous grounds such as undue delay, undue prejudice to the defendants, and futility of the amendment." (quotations omitted)).

Consistent with *Foman's* recognition that leave to amend can be denied for "undue delay," the Eleventh Circuit has upheld decisions by district courts denying leave to amend when the movant did not show good cause for a significant delay. *E.g., Maynard,* 342 F.3d at 1287 (affirming denial of motion for leave to amend when there was "no good reason why [the plaintiff] could not have made the motion earlier" and the movant had not explained its failure to include the amended claim in its original filing); *Brewer–Giorgio v. Producers Video, Inc.,* 216 F.3d 1281, 1284 (11th Cir.2000) (affirming denial of motion for leave to amend filed over a year after commencement of action when movant "failed to demonstrate good cause for that delay"); *Sosa v. Airprint Systems, Inc.,* 133 F.3d 1417, 1418 (11th Cir.1998) (same). In rulings binding on this court, the Fifth Circuit has recognized specifically that leave to amend may be denied when the district court has ruled upon a dispositive motion, because "[a] busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim.*" *Freeman v. Continental Gin Co.,* 381 F.2d 459, 469–70 (5th Cir.1967) [14]; *see also Gregory v. Mitchell,* 634 F.2d 199, 202–03 (5th Cir. Jan.12, 1981) (applying *Freeman* and affirming denial of leave to amend sought after motion to dismiss and motion

Plaintiff–Growers in the underlying litigation in Case No. 99–2310. (Report at 10 n.10).

**14.** The Eleventh Circuit adopted as binding precedent all cases decided by the former

Fifth Circuit prior to the close of business on September 30, 1981. *See Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

for summary judgment had been taken under submission). I have recognized under other circumstances that leave to amend need not be granted when "the parties and the Court have already expended considerable time and resources" litigating prior claims. *Dannebrog Rederi AS v. M/V TRUE DREAM,* 146 F.Supp.2d 1307, 1316–17 (S.D.Fla.2001).

■ As I explain below, Plaintiff–Growers' actions have been pending for, in some cases, as long as five years. During that time, extensive proceedings regarding the merits of Plaintiffs' existing claims have already taken place before this Court, the Eleventh Circuit, and the state supreme courts of Florida and Delaware. Plaintiffs could and should have made any necessary amendments to their pleadings years ago, before this Court and DuPont expended enormous time and effort in addressing the merits of the claims asserted originally.

Plaintiff–Growers filed their First Amended Complaints on October 22, 1998 (Case Nos. 98–2242, 98–2243, 98–2244, 98–2245, 98–2246, 99–2247, 99–2248, 98–2249, 99–2254) and Complaints on February 4, 1999 (Case No. 99–0336), August 19, 1999 (Case Nos. 99–2307, 99–2308, 99–2309, 99–2310), and July 31, 2000 (Case Nos. 00–2771, 00–2772, 00–2773). Plaintiff–Growers moved to amend these Complaints more than one year later, on August 1, 2001, two days prior to the scheduled oral argument on DuPont's motions for judgment on the pleadings in Case No. 98–2256. (Plaintiffs' Motion to Amend and Memorandum in Support of Motion to Amend, DE # s 278, 279, filed on August 1, 2001). The proposed Second Amended Complaints contained 207 allegations and sought relief in the form of eleven counts, collateral estoppel, and punitive damages. (*Id.* at Exhs. 1, 2). After these Motions were denied as moot in *Florida Evergreen I,* Plaintiff–Growers filed another Motion

to Amend (DE # 406) and Memorandum of Law in Support of Motion to Amend (DE # 407) on November 10, 2003, this time proposing amended complaints consisting of two counts alleging violations of the Florida Civil Remedies for Criminal Practices Act. Plaintiff–Growers later filed a "Corrigenda" to Plaintiffs' Memorandum in Support of Motion to Amend First Amended Complaints (DE # 409) which purported to be "identical to the original memorandum … with the exception of the substitution of two exhibits, Exhibit 5 and Exhibit 6, in place of the original Exhibit 5 and original Exhibit 6 filed with the original memorandum." (Corrigenda at 1). Exhibits 5 and 6 are actually the proposed Second Amended Complaints, and these proposed complaints present yet a different set of claims than the proposed complaints filed a month earlier. Instead of only including two counts for relief, the latest proposed complaints include 98 allegations and consist of the two Florida RICO Counts and nine other Counts. Thus, Plaintiff–Growers have waited at least three years, and in some cases more than five years, to file amended complaints in the form attached to their latest Motion to Amend.

Plaintiff–Growers could not offer valid reasons for their delay, either in their briefs or during oral argument. Plaintiff–Growers do not argue that the amendments reflect facts which they did not know when they filed their prior pleadings; rather, they acknowledge that "[t]he factual scenario upon which all causes of action are based has not changed." (Corrigenda at 4). Plaintiff–Growers make the following arguments in support of their Motion: (1) recent decisions such as *Green Leaf* have clearly defined the different causes of action available for the alleged facts, (2) Florida state courts have allowed Florida RICO claims to go to the jury, (3) the cases are still in the pleading stage, and (4)

DuPont will not be prejudiced if the amendments are allowed. Each of these arguments is without merit.

First, the amendments in the proposed complaints cannot have logically evolved from the *Green Leaf* decision. That decision affirmed my Orders entering judgment on the pleadings in favor of DuPont on claims that are substantially similar to the claims Plaintiff–Growers seek to include in their Second Amended Complaints. *See supra* Background, Part I. Thus, despite the argument that Plaintiff–Growers seek to amend their complaints based on guidance from *Green Leaf,* they propose the very claims the Eleventh Circuit denied in that opinion.

Second, the Florida state cases on which Plaintiff–Growers rely to support their Florida RICO amendments actually resulted in a directed verdict for DuPont on the Florida RICO claims. (Corrigenda at Exh. 1). Plaintiff–Growers argue that in these cases, a Florida jury returned verdicts in favor of other growers asserting Florida RICO claims against DuPont. Plaintiffs fail to acknowledge, however, that the trial court set aside these verdicts and directed a verdict in favor of DuPont on these claims. *(Id.).* The directed verdict was recently affirmed on appeal. *See Palmas Y Bambu v. Dupont,* 881 So.2d 565 (Fla. 3rd DCA 2004). Further, the rulings against DuPont were reversed. *Id.* Plaintiff–Growers proposed allegations do not cure the defects that resulted in a directed verdict for DuPont in the state cases. It is not logical for Plaintiff–Growers to argue that they now seek to add claims based on recent decisions which have concluded that those claims do not have merit. Further, Plaintiff–Growers acknowledge in their Reply that the federal and Florida racketeering acts are similar and thus adding Florida RICO claims will not materially change the nature of this litigation. (Reply at 10). This argument begs a question Plaintiff–Growers could not answer in their briefs or during oral argument, namely, if the facts and arguments for the federal and Florida RICO claims are the same, why did Plaintiff–Growers fail to assert the Florida RICO claims from the inception of these cases?

Third, these cases are not in the early stages that Plaintiff–Growers represents they are. Plaintiff–Growers argue that these cases are in the pleading stages, and that the Motion to Amend was timely when filed in August 2001 and timely when renewed in November 2003. (Reply at 2). As noted above, the "renewed" Motion actually sought to file amended complaints that were different from the complaints proposed in August 2001, and the Plaintiff–Growers filed yet another proposed amended complaint in December 2003. Further, these amendments have been proposed five years after the first of these cases began, after questions have been certified to two courts, after motions to dismiss have been resolved, after I have issued two lengthy Orders on motions for judgment on the pleadings in one of these cases, and after the Eleventh Circuit affirmed my Orders. To argue that this consolidated action is in the early stages grossly misrepresents the proceedings that have been underway in this case for the past five years.

The fact that there has been substantial progress in the consolidated case undercuts Plaintiff–Growers' remaining argument, that DuPont will not suffer prejudice if the Motion to Amend is granted. As DuPont stated in oral argument, Federal Rule of Civil Procedure 1 explains that the scope and purposes of the Federal Rules is "to secure the just, speedy, and inexpensive determination of every action." (Transcript at 55–56, citing Fed.R.Civ.P. 1). According to DuPont, Plaintiff–Grow-

ers' Motion to Amend represents an attempt to undermine this purpose and maintain this case in federal court until the Searcy Denney Growers can argue these cases in state court and, hopefully for Growers, produce a different result than the Eleventh Circuit case. (Transcript at 56). The prejudice to DuPont results from the prejudice to the justice system itself. Failing to raise these issues previously kept the issues from being resolved along with the other issues. This failure places the DuPont, the Eleventh Circuit, and myself in a position where issues in this case are being resolved in a piecemeal fashion with no logical conclusion. It would be a detriment to the system to proceed in this piecemeal manner. Based on the foregoing, I conclude that Plaintiff–Growers' Motion to Amend is untimely. The Motion is therefore denied.

### (2) Futility

In addition to being untimely, Plaintiff–Growers' Motion to Amend is denied for another reason: the proposed claims are futile because they would not survive a motion to dismiss.[15] After briefly providing a background regarding the differences between these cases and Case No. 98–2256, I will address Plaintiff–Growers' Florida RICO counts, and then I will examine the remaining proposed claims.

### (a) General Factual Background

As I explained in the Background section, *supra,* my two previous Orders and the Eleventh Circuit opinion in this case involved Plaintiff–Growers in Case No. 98–2256. Those Plaintiff–Growers were chosen as Growers whose claims were representative of the seventeen remaining Plaintiff–Growers' claims. Nevertheless, accepting the allegations in the proposed Second Amended Complaint as true, as I am required to do when considering the viability or futility of the amendments under a motion to dismiss standard, there are some factual differences between the cases that Plaintiff–Growers have emphasized. Specifically, Plaintiff–Growers represented by Sheehe & Vendittelli were involved in the following cases: *Fred Henry's Petals of Paradise and KHD, Ltd.* (*see, e.g.,* Second Amended Complaint, Exh. 5 ¶ 23), and Plaintiff–Growers represented by Malone were involved in the *Anthony & Sons* trial (*see, e.g.,* Second Amended Complaint, Exh. 6 ¶ 23). Some of the alleged predicate racketeering acts occurred during these cases. (*See* Second Amended Complaints). Thus, if the only ground for dismissal of the fraud claims were that the Plaintiff–Growers have not alleged a direct enough injury, *see infra* Part I.A(2)(b)(iv), the proposed amendments might not have been denied as futile. As explained below, however, alleging a direct injury is not

---

**15.** Plaintiff–Growers mischaracterize *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417 (6th Cir.2000). (Corrigenda at 7). They cite *Rose* for the proposition that "the test for futility does not depend a[sic] whether the proposed amendment could potentially be dismissed on summary judgment of [sic] whether it could withstand a Rule 12(b)(6) motion to dismiss." (Corrigenda at 7). In that case, however, the court specifically stated that a proposed amended complaint could be denied as futile if it could not survive a Rule 12(b)(6) motion to dismiss. *Rose,* 203 F.3d at 420. In

reversing the district court's denial of the motion to amend, the court emphasized the fact that the district court did not provide an explanation for its decision: "[i]n the present case, the district court issued a marginal entry order denying Rose's motion for leave to amend his complaint, but it did not provide a justification or explanation for its denial. Because the district court denied Rose's motion without explanation, it has clearly abused its discretion in this case." *Id.* In this case, I am providing several reasons for my decision to deny the Motion to Amend as futile.

enough to overcome the defects in each of Plaintiff–Growers' proposed claims.

### (b) Florida RICO Counts

■ Plaintiff–Growers' proposed amendments include claims that DuPont violated the Florida Civil Remedies for Criminal Practices Act. This Act, Florida Statutes § 772.101 *et seq.*, is patterned after the Racketeer Influenced and Corrupt Organization Act ("RICO"), codified at 18 U.S.C. § 1961 *et seq.*, and Florida courts often look to federal courts' interpretation of the federal statutes for guidance and as persuasive authority. *See Lugo v. State*, 845 So.2d 74, 96 n. 39 (Fla.2003) ("Florida['s] RICO statute, section 895.03,[16] Florida Statutes (1993), is patterned after its federal counterpart [and] Florida courts may look to federal RICO decisions as persuasive authority") (citations omitted), *cert. denied,* —— U.S. ——, 124 S.Ct. 320, 157 L.Ed.2d 216 (2003); *Gross v. State*, 765 So.2d 39, 42 (Fla.2000) ("[G]iven the similarity of the state and federal [RICO] statues, Florida courts have looked to the federal courts for guidance in construing RICO provisions.") (citations omitted), *cert. denied,* 532 U.S. 948, 121 S.Ct. 1416, 149 L.Ed.2d 357 (2001); *Jackson v. Bell-South Telecommunications*, 372 F.3d 1250 (11th Cir.2004) ("We have explained that the interpretation of Florida's RICO law 'is informed by the case law interpreting the federal RICO statute ... on which Chapter 772 is patterned.'") (quotation omitted). Accordingly, I will examine cases interpreting the Florida and federal RICO to assess whether the proposed Counts are futile.

Plaintiff–Growers allege that DuPont engaged in criminal activity actionable pursuant to Florida Statutes § 772.103(3), which provides that it is unlawful for any person "[e]mployed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity or the collection of an unlawful debt." (Corrigenda Exh. 5, Count I; Exh. 6, Count I). A "pattern of criminal activity" is defined as "engaging in at least two incidents of criminal activity that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics that are not isolated incidents." Fla. Stats. § 772.102(4).

Plaintiff–Growers seek to allege that "DuPont, the law firm of Alston & Bird, Dow N. Kirkpatrick, Elizabeth Gilley, Todd David, Edgar Woolard, Timothy Obrigawitch, Bruce Hadley, George Frank, Nicholas Albergo, the Burke Cabaniss law firm, Thomas Burk, the Popham Haik law firm, ALTA labs, Robert Bethem, and/or others" were part of an enterprise whose intent was to defraud all Benlate product liability claimants. (Corrigenda Exh. 5, Count I and Exh. 6, Count I). The predicate acts, or incidents of criminal activity, allegedly include multiple acts of (1) organized fraud and communications fraud in violation of Florida Statutes §§ 817.034(4)(a) and 817.034(4)(b), (2) false affidavit perjury in violation of Florida Statutes § 322.33, perjury in official proceedings and by contradictory statements in violation of Florida Statues §§ 837.02 and 837.021, (3) tampering with witnesses

---

16. In 1986, the civil damages section of chapter 895 was moved to chapter 772 because of problems resulting from the inclusion of a civil damages remedy in a criminal statute. *RLS Business Ventures, Inc. v. Second Chance Wholesale, Inc.,* 784 So.2d 1194, 1196 (Fla. 2d DCA 2001), *rev. denied,* 790 So.2d 1107 (Fla.2001). According to *RLS Business Ventures,* "the civil damages provisions of the federal and the Florida Statutes are strikingly similar" and "federal cases interpreting the federal civil damages remedy are also persuasive in interpreting section 772.104." *Id.*

in violation of Florida Statutes § 914.22, (4) tampering with or fabricating physical evidence in violation of Florida Statutes § 918.13, (5) mail and wire fraud in violation of 18 U.S.C. § 1343, (6) obstructing justice in federal courts in violation of 18 U.S.C. § 1503, (7) tampering with witnesses in violation of 18 U.S.C. § 1512, (8) tampering with or fabricating physical evidence in violation of 18 U.S.C. § 1512(c), and (9) racketeering activity as defined in 18 U.S.C. § 1961(1)(B). (*Id.*). Plaintiff–Growers' proposed Count II alleges that DuPont violated § 772.103(4), which prohibits any person from conspiring to violate § 772.103(3).

DuPont argues that the proposed Florida RICO claims would be futile for the following reasons: (1) Plaintiff–Growers have failed to allege an "enterprise" for FCPA purposes, (2) most of these allegations are based on fraud, for which Plaintiff–Growers cannot state a claim because they cannot meet the reasonable reliance requirement, (3) Plaintiff–Growers' RICO case statement is based on alleged criminal activity in the *Bush Ranch* case, where Plaintiff–Growers were not parties, (4) litigation immunity bars the allegations based on activity in litigation proceedings, and (5) Plaintiff–Growers have failed to plead fraud with specificity. (*See* DuPont's Supplemental Memorandum in Opposition to Plaintiff's Motion for Leave to Amend First Amended Complaints, DE# 415, filed January 6, 2004; DuPont's Supplemental Memorandum in Opposition to Plaintiff's Motion for Leave to Amend First Amended Complaints, DE # 442, filed March 12, 2004). After briefly discussing the law of the case doctrine as it relates to the proposed amendments, I will address each of these arguments in turn.

*(i) Law of the Case Doctrine*

DuPont urges me to focus on a footnote in *Green Leaf* suggesting that Florida RICO claims would be futile. *See Green Leaf*, 341 F.3d at 1309 n. 17 ("Additionally, Plaintiffs' proposed Florida RICO claims were futile, for the same reasons supporting the dismissal of Plaintiffs' federal RICO claims"), citing *O'Malley v. St. Thomas Univ., Inc.*, 599 So.2d 999, 1000 (Fla.3d D.C.A.1992) (relying on federal RICO caselaw in affirming the dismissal of Florida civil RICO claims on the ground that "indirect injury" is not sufficient to confer standing under Florida RICO). This language, however, does not necessarily preclude the RICO claims because it is not a part of "the law of the case" in Case No. 98–2256 and is not binding precedent in the remaining cases.

 The law of the case "doctrine provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Murphy v. F.D.I.C.*, 208 F.3d 959, 965 (11th Cir.2000), citing *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983). According to this doctrine, an appellate court's decision of a legal issue must be followed in all subsequent trial or intermediate appellate proceedings in the same case, unless "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to [the contested] issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1003 (11th Cir.1997), citing *DeLong Equip. Co. v. Washington Mills Electro Minerals Corp.*, 990 F.2d 1186, 1196 (11th Cir.1993); *Barber v. International Bhd. of Boilermakers, Dist. Lodge # 57*, 841 F.2d 1067, 1072 (11th Cir.1988). However, in order for the law of the case doctrine to apply, the issue contested on the latter appeal must be the same issue that was contested on and decided by the former appeal.

*Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1003 (11th Cir.1997), citing *Lawson v. Singletary*, 85 F.3d 502, 512–13 (11th Cir.1996) (concluding that law of the case doctrine did not preclude later appeal where, inter alia, the focus of the former appeal was on a different issue). Similarly, if a contested issue is not an issue the Eleventh Circuit decided, the Eleventh Circuit's statements regarding the issue must be analyzed to determine whether they are binding precedent or merely dicta.

■ The Eleventh Circuit mentioned Florida RICO while it was discussing the Plaintiffs' Motion to Amend in Case No. 99–2256. *See Green Leaf*, 341 F.3d at 1309 n. 17. It affirmed my denial of the Motion because the Plaintiffs had filed a Notice of Appeal, thus divesting me of jurisdiction. *Id.* at 1309. After discussing my reason for denying the Motion, it noted that the proposed Florida RICO claims "were futile." *Id.*

It appears that the court was simply stating my reasons for denying the Motion to Amend when it discussed the Florida RICO claim. These statements are dicta because the issue before the court was whether I had jurisdiction to hear Case No. 98–2256 Plaintiff's Motion to Amend, not whether the remaining Motions to Amend were futile. Because the Eleventh Circuit did not actually decide that the Florida RICO claims were futile, I conclude that this is not the law of the case or binding precedent. I also note that DuPont admitted at oral argument that these statements do not form the law of the case. (Transcript at 53–54). Accordingly, I cannot rely on the Eleventh Circuit's comment that proposed Florida RICO claims would be futile. I must instead examine the proposed claims to determine whether they would survive a motion to dismiss.

*(ii) Enterprise*

DuPont argues that the proposed RICO amendments would be futile because Plaintiff–Growers fail to allege a RICO enterprise that is separate and distinct from DuPont itself. DuPont states that the single fact that Plaintiff–Growers have not alleged a distinct RICO enterprise warrants dismissal of the RICO claims whether or not Plaintiff–Growers have sufficiently alleged the remaining elements of a RICO claim. For the reasons set forth below, I conclude that DuPont is correct.

■ The relevant Florida RICO provision makes it unlawful for any person "[e]mployed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity or the collection of an unlawful debt." Fla. Stat. § 772.103(3). Thus, for a "person" to be liable under RICO, it must be shown that the person was employed by, or associated with a distinct enterprise "that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001) ("In ordinary English one speaks of employing, being employed by, or associating with others, not oneself."). Both the United States Supreme Court and the Florida Supreme Court have required proof of a RICO "enterprise" that is separate and distinct from the person charged with the RICO violation. *See United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); *Gross v. State*, 765 So.2d 39, 43 (Fla.2000) (adopting *Turkette* as a matter of Florida RICO law); *see also U.S. v. Goldin Indus., Inc.*, 219 F.3d 1268, 1270–71 (11th Cir.2000) (en banc) (ruling that the "plain language" of RICO requires that the "enterprise" be "separate and distinct" from the "person" who is the defendant), *cert. denied*, 531 U.S. 1015, 121 S.Ct. 573, 148 L.Ed.2d 491 (2001). Thus,

there is a "distinctiveness" requirement for RICO enterprises.

In another DuPont case, a Florida appellate court recently affirmed a directed verdict for DuPont on the plaintiffs' RICO claims. *Palmas Y Bambu v. E.I. Dupont De Nemours & Co., Inc.*, 881 So.2d 565 (Fla. 3d DCA, 2004).[17] In that case, the court affirmed in part and reversed in part the lower court's rulings. The plaintiffs in *Palmas Y Bambu* alleged a RICO enterprise consisting of DuPont, its officers, directors and employees, its outside counsel Thomas Burke, and his law firm Cabiniss & Burke. *Id.* at 574 n. 6. The court explained as follows:

> Because a corporation can only function through its employees and agents, any act of the corporation can be viewed as an act of such an enterprise, and the enterprise is in reality no more than the defendant itself. Thus, where employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation.

*Id.* at 573, citing *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir.1994) (citations omitted) (affirming dismissal of a civil RICO action alleging that a bank via its employees had used extortion and mail fraud to coerce borrowers into restructuring their loans) (further citations omitted). The court concluded that "no distinctness exists because the distinctness requirement cannot be circumvented by 'alleging a RICO enterprise that consists merely of a corporate defendant [person] associated with its own employees or agents carrying on the regular affairs of the defendant.'" *Id.* at 573 (citations omitted).[18]

Plaintiff–Growers in this case allege the following RICO enterprise:

> DuPont, the law firm of Alston & Bird, Dow N. Kirkpatrick, Elizabeth Gilley, Todd David, Edgar Woolard, Timothy Obrigawitch, Bruce Hadley, George Frank, Nicholas Albergo, the Burke Cabaniss law firm, Thomas Burke, the Pophaim law firm, ALTA Labs, Robert Bethem, and/or others....

(Corrigenda at Exh. 5 ¶ 39, Exh. 6 at ¶ 39). According to Plaintiff–Growers' Local Rule 12.1 First Supplemental Civil RICO Case Statement (DE # 262), which Plaintiff–Growers expressly incorporate by reference (Corrigenda at Exh. 5 ¶ 9, Exh. 6 ¶ 9)[19], each and every one of the listed

---

**17.** DuPont submitted a copy of this case in its Second Notice of Intervening Authority (DE # 466, filed June 4, 2004).

**18.** During oral argument, Plaintiff–Growers argued that committing dishonest acts are not the regular affairs of a corporation, and thus, DuPont's employees and agents were not acting as employees and agents when they engaged in fraudulent conduct. (*See, e.g.,* Transcript at 69). This argument mischaracterizes the court's opinion in *Palmas Y Bambu.* In that case, each of the alleged predicate acts involved fraudulent conduct on the part of DuPont's employees and agents. *Palmas Y Bambu,* 881 So.2d at 575. Nowhere does the court state that because these predicate acts involved dishonesty, the acts were not part of DuPont's regular affairs.

Rather, because the people committing these acts were DuPont's employees or agents, and because DuPont cannot commit any acts except through its employees and agents, DuPont could not be considered as separate and distinct from these employees and agents. Thus, although Plaintiff–Growers argue otherwise, the fact that the affairs DuPont was conducting allegedly involved fraud was not relevant to court's conclusion that the plaintiffs had not alleged a distinct enterprise.

**19.** Local Rule 15.1 actually prohibits incorporating other pleadings by reference in a proposed amended complaint. Nevertheless, Plaintiff–Growers insist that the RICO Case Statement should be considered because their new allegations are based on the exact same facts as their original allegations, and thus the

parties is or was a DuPont employee or agent.[20] Alston & Bird and its attorneys Dow N. Kirkpatrick, Elizabeth Gilley and Todd David served as DuPont's counsel during the *Bush Ranch* trial in 1993. (RICO Case Statement at 27, 31, and 32). The RICO Case Statement refers to Timothy Obrigawitch as a "DuPont employee" (*see, e.g., id.* at 9), Bruce Hadley as "DuPont's Bruce Hadley" (*id.* at 12), George Frank as DuPont's corporate counsel (*id.* at 31), and Nicholas Albergo as a consultant for DuPont's attorneys (*id.* at 43). Cabaniss, Burke & Wagner served as DuPont's National Coordinating Counsel for Benlate litigation in September 1992, and Thomas Burke was one of the partners primarily responsible for Benlate litigation. (*Id.* at 11). The law firm of Popham, Haik represented DuPont, as shown by the allegation that Individuals who performed services for DuPont sent their invoices to Pophaim, Haik lawyers. (*Id.* at 8, 9). Alta Labs, and its employee Robert Beth-

em (*id.* at 28, 34), were retained by DuPont to analyze soils (*id.* at 33) and are also referred to as consultants for DuPont's attorneys (*id.* at 43). Edgar Woolard is the former president and CEO of DuPont.[21] Plaintiff–Growers' reference to "and/or others" as part of the RICO enterprise does not meet basic notice pleading requirements. See Federal Rule of Civil Procedure 8(a) (requiring Complaint to set forth a statement of the claim showing that the pleader is entitled to relief). Accordingly, Plaintiff–Growers have failed to allege RICO claims involving a distinct enterprise. This failure is sufficient in and of itself to deny the proposed Florida RICO claims as futile.

*(iii) Reasonable Reliance: Organized and Communications Fraud and Mail and Wire Fraud*

■ Two of the incidents Plaintiff–Growers seek to allege as part of a pattern of criminal activity are organized fraud and communications fraud in violation of

RICO Case Statement applies to the Second Amended Complaints. (Transcript at 74). I note that this argument underscores the fact that Plaintiff–Growers should have been able to file these claims during the initial stages of litigation rather than waiting between three and five years to seek amendment. In any event, with the understanding that Plaintiff–Growers would simply file the same RICO Case Statement if their Motion to Amend were granted, I will refer to portions of the RICO Case Statement in assessing the viability of the proposed claims.

**20.** The only member of the alleged "enterprise" Plaintiff–Growers actually take the time to describe in their proposed Complaints is DuPont. Interestingly, however, Plaintiffs' First Amended Complaint in Case Nos. 98–2242 (DE # 10) and 98–2256 (DE # 2), which is virtually identical to remaining Plaintiff–Growers' Complaints, refer to each of these members, which the exception of the Pophaim law firm, as "DuPont's agents and joint venturers acting within the course and scope of their agency or joint venture, and each of their acts and omissions were authorized by DuPont and ratified by DuPont."

First Amended Complaint (Case No. 98–2242, DE # 10) at ¶ 44, First Amended Complaint (Case No. 98–2256, DE # 2) at ¶ 44.

**21.** Although the RICO Case Statement does not identify Woolard, Plaintiff–Growers' First Amended Complaint identifies him as DuPont's former president and CEO. (DE # 2, ¶ 43). Further, DuPont's website describes Woolard as the company's former CEO. *Press Release, E.I. DuPont De Nemours & Co., Dupont Marks 200th Anniversary by Dedicating Time Capsule at Founding Site,* (July 20, 2002), http://www1.dupont.com/NASApp/dupontglobal/corp/index.jsp?page=/content/US/en_US/news/releases/2002/nr07_20_02.html. Accordingly, pursuant to Federal Rule of Evidence 201, I take judicial notice of the fact that Woolard was DuPont's employee or agent. *See* Fed. R.Evid. 201 (allowing a court to take judicial notice at any stage of the proceeding of a fact not subject to reasonable dispute and generally known or capable of accurate and ready determination).

Florida Statutes §§ 817.034(4)(a) and 817.034(4)(b), and mail and wire fraud in violation of 18 U.S.C. § 1343. DuPont argues that these incidents should be dismissed for a failure to meet proximate cause and reasonable reliance requirements just as they were in Case No. 98–2256. Plaintiff–Growers do not respond to these arguments in their Reply. They did, however, state during oral argument that reasonable reliance is not an element of the type of fraud which they are alleging. (Transcript at 66). Plaintiff–Growers argue that they are alleging "negative fraud" such as concealment and destruction of evidence, which do not require a showing of reasonable reliance.[22] (*Id.*).

DuPont pointed out during oral argument that RICO still requires that the plaintiff link the damages suffered to the conduct alleged to form the predicate act. (Transcript at 80). Florida Statute § 772.104 allows a person to bring a civil RICO claim if "he has been injured by reason of" any RICO violation. *See also* 18 U.S.C. § 1964(c) (allowing people injured "by reason of a violation" of the RICO statutes to bring a RICO claim); *Holmes v. Sec. Investor Protection Corp.,* 503 U.S. 258, 268, 112 S.Ct. 1311, 1317–18, 117 L.Ed.2d 532 (explaining that Section 1964(c) requires a showing of proximate cause). And as I explained in my previous Orders and as I summarize below, under Florida law, Plaintiff–Growers must allege reasonable reliance in order to meet proximate cause requirements with respect to their RICO fraud claims.

Plaintiff–Growers, however, cannot sufficiently make this allegation for the same reason Plaintiffs in Case No. 98–2256 could not sufficiently allege reasonable requirement: based on the history and circumstances of this litigation, and because of the controversies and accusations involving

DuPont that have been made for years, it is not reasonable for Plaintiff–Growers to rely on DuPont's representations in the course of settlement negotiations. Further, as DuPont stated during oral argument, "Because their reliance is not reasonable, it is considered as though they inflicted this settlement on themselves. If they relied on something that it was unreasonable for them to do, they made the decision. They broke the chain of causation, and there is no ability on their part to prove that they suffered injury by reason of the [predicate acts]." (Transcript at 82).

I have already dismissed similar RICO fraud claims, and these dismissals have been affirmed by the Eleventh Circuit. My previous decisions regarding fraud were based on state law precedents on fraud law, such as *Mergens v. Dreyfoos,* 166 F.3d 1114 (11th Cir.1999), to inform the disposition of federal civil RICO claims. *Id.* (relying on Florida state law). Further, as I have already explained, the Florida RICO statutes are patterned after the federal RICO, and Florida courts often look to the federal Act as persuasive authority on Florida's RICO. Thus, I will use the same standards in assessing the viability of Plaintiff–Growers' organized and communications fraud claims, which allege state law violations (*see* Florida Statute § 817.034(b)), and mail and wire fraud claims, which allege federal law violations.

▮ As I explained in *Florida Evergreen II,* in order to establish proximate causation in a civil RICO action predicated on fraud, the purported victim must make the same showing of reasonable reliance that is required for establishing injury from common law fraud. *Florida Evergreen II,* 165 F.Supp.2d at 1351–1352,

---

**22.** I rejected the same argument when Plaintiff–Growers raised it during oral argument

preceding *Florida Evergreen II.* (*See* August 3, 2001 Transcript at 34–35).

citing *Pelletier v. Zweifel*, 921 F.2d 1465, 1499 (11th Cir.1991) ("Mail and wire fraud, just like common law fraud, ... entail 'an intention to induce the [victim] to act or to refrain from action in reliance upon the misrepresentation.'") (further citations omitted). My earlier Orders granted DuPont's motion for judgment on the pleadings based on Plaintiffs' inability to establish reasonable reliance, finding that Plaintiffs' fraud claims failed as a matter of law. *See id.* at 1351–1354. Those Orders relied primarily on *Mergens v. Dreyfoos*, 166 F.3d 1114 (11th Cir.1999) and its progeny for the proposition that, "when negotiating or attempting to compromise an existing controversy over fraud and dishonesty it is unreasonable to rely on representations made by the allegedly dishonest party." *Mergens*, 166 F.3d at 1118 (quoting *Pettinelli v. Danzig*, 722 F.2d 706, 710 (11th Cir.1984)).

The *Mergens* decision represents the straightforward application of the reasonable reliance requirement to a particular factual setting: a setting in which the plaintiffs were sophisticated actors, the parties had been in an adversarial relationship since well before the execution of the agreement at issue, and the plaintiffs had entered into the agreement to settle an existing lawsuit that claimed fraud. *See Mergens*, 166 F.3d at 1118. The Eleventh Circuit found that in such a situation, a party has no legal right to rely on the representations of the other party, and that such a finding is consistent with the applicable precedent. *See id.* ("In factual situations substantially similar to this action, this Circuit and various district courts have held that the plaintiffs were unjustified in relying on representations made by the defendants."). I concluded that the Plaintiffs in Case No. 98–2256 could not establish, as a matter of law, justifiable reliance with respect to Plaintiffs' fraud in the inducement claims and mail and wire fraud claims.

According to the proposed amended complaints, Plaintiff–Growers in these case were just as sophisticated as the growers in Case No. 98–2256. They were represented by counsel and those counsel were in contact with other Benlate plaintiffs' lawyers throughout the country and were monitoring other Benlate litigation to gain information. (*See, e.g.,* Corrigenda at Exh. 5 ¶¶ 20, 22, Exh. 6 ¶¶ 20, 22). Furthermore, the parties in this case were in an extremely adversarial, litigious relationship prior to the execution of the agreement. Numerous other Benlate related lawsuits, including *Bush Ranch*, and *Kawamata/Tomono*, which Plaintiff–Growers admit to monitoring, considering, and relying upon (*see id.*) were filed against DuPont in the early 1990's, and those cases were culminating in the first trials in 1994. The parties were aware of the stakes involved in such litigation, and, as evidenced by the discovery disputes and allegations of fraudulent discovery conduct in related Benlate cases, the litigation was contentious. Finally, if the parties monitored and relied upon related cases, they knew that certain Benlate actions, such as the action leading to the filing of Case No. 98–2256, included allegations that DuPont committed actual fraud. *See Florida Evergreen I*, 135 F.Supp.2d at 1293 (explaining that the fraud allegations in the underlying lawsuit were related to the fraud alleged in Case No. 98–2256). Thus, Plaintiff–Growers were sophisticated actors in an adversarial relationship with a party who had been accused of actual fraud in similar cases. I conclude based on the allegations in the proposed amended complaints that the *Mergens* rule applies and that the proposed RICO fraud claims would be futile.

*(iv) Indirect Injury*

Unlike Plaintiffs in Case No. 98–2256, Plaintiff–Growers argue that they were di-

rectly involved in cases in which certain predicate acts occurred. I will discuss the background of my previous Orders and *Green Leaf* before I turn to the Plaintiff–Growers' claims.

In Case No. 98–2256, the Eleventh Circuit affirmed my ruling that Plaintiffs must allege direct injury in order to make a cognizable RICO claim. *See Florida Evergreen II*, 165 F.Supp.2d at 1351, 1354–1356; *aff'd, Green Leaf*, 341 F.3d at 1307–1308. In *Green Leaf*, the Eleventh Circuit explained that a civil RICO plaintiff must show that the alleged racketeering activity caused him to suffer an injury. *Green Leaf*, 341 F.3d at 1307 (citation omitted). The predicate acts must not only by the "but for" cause of the injury, but the proximate cause as well. *Id.* (citation omitted). Further, a "plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [is] generally said to stand at too remote a distance to recover." *Id.* (citation omitted). Plaintiffs in Case No. 98–2256 were not able to satisfy these proximate cause requirements because the predicate acts were alleged to have been committed in the *Bush Ranch* case in which Plaintiffs were not parties. *Id.* Plaintiffs' claims that DuPont knew that they were monitoring the *Bush Ranch* case were "too remote to satisfy the proximate cause requirements because the directness inquiry is not a question of specific intent." *Id.* (citation omitted).

I am not convinced that Plaintiff–Growers' proposed Florida RICO claims overcome this defect; however, they have not pled fraudulent predicate acts with the particularity that would allow me to determine whether these predicate acts actually occurred in cases in which they were parties. As a preliminary matter, I note that Plaintiff–Growers insist on alleging injury based on proceedings to which they were not parties:

In 1992 through the spring of 1994, DuPont knew or should have known that Plaintiff's attorneys were communicating with other attorneys representing grower-claimants in Florida, Georgia, Hawai'i, and other jurisdictions for the purpose of sharing information and evidence related to the Benlate product liability claims. Therefore Dupont knew or should have known that the body of evidence generated in any one of the Benlate product liability suits would be available to and would be considered and relied upon by attorneys and grower-claimants in other jurisdictions, and have a direct impact on settlement and/or litigation of hundreds of Benlate product liability claims, including Plaintiff's.

(Corrigenda at Exh. 5 ¶ 22, Exh. 6 ¶ 22). Further, Plaintiff–Growers allege the following:

Plaintiff did rely upon the evidentiary record created by DuPont in all the Benlate product liability cases. Such reliance was reasonable in light of the facts and events and Plaintiff's state of mind and the state of mind of the attorneys representing Plaintiff at the time Plaintiff settled it's [sic] Benlate product liability cases with DuPont.

(Corrigenda at Exh. 5 ¶ 32, Exh. 6 ¶ 32). These allegations allege injury based on conduct in other cases and thus do not meet direct injury requirements.

Further, Plaintiff–Growers' allegations that they were directly involved in certain cases during which predicate acts occurred are insufficient to maintain their RICO claims. Plaintiff–Growers represented in the underlying action by Sheehe & Vendittelli allege direct involvement in *Fred Henry's Petals of Paradise* and *KHD, Ltd.*, in which three out of the ten alleged predicate acts occurred. (Corrigenda at Exh. 5 ¶¶ 23, 25, 28, alleging violations of

Fla Stats. §§ 817.034(4)(a) and (b), 837.02 and 837.021, and 918.13, respectively). These allegations do not meet direct injury with respect to seven of the alleged predicate acts. For the remaining three predicate acts, the Second Amended Complaint is silent as to what specific fraudulent statement was made, by whom, or during what time in the two cases in which Plaintiff–Growers were directly involved. The RICO Case Statement provides information regarding who made false statements and when the statements were made, but it does not allege what the content of the misrepresentations was. (*See, e.g.,* RICO Case Statement at 24). Rather, the document simply lists under a heading titled "False Arguments" sixteen items such as the following: "10. 09/23/1993 *Fred Henry* trial transcript (Shepherd closing statements)." (*Id.*). This general allegation does not meet Federal Rule 9(b)'s requirement of pleading fraud with particularity or Local Rule 12.1's requirement that RICO claims based on predicate acts of fraud "identify the time, place, and contents of the misrepresentations or omissions, and the identity of persons to whom and by whom the misrepresentations or omissions were made."

The same is true with respect to Plaintiff–Growers who were represented in the underlying litigation by Malone. These Plaintiff–Growers allege that they were involved in the *Anthony & Sons* trial, during which five of the ten predicate acts occurred. (Corrigenda at Exh. 6 ¶¶ 23, 25, 26, 28, 29). These allegations fail to state a claim for direct injury with respect to half the predicate acts. As to the remaining acts, neither the Second Amended Complaint nor the RICO Case Statement plead fraud with the particularity required under the Federal or the Local Rules. I cannot determine from these vague allegations whether the direct injury requirement has been met.

Thus, Plaintiff–Growers represented in the underlying action by Sheehe & Vendittelli have not alleged direct injury requirements with respect to seven of the ten alleged predicate acts. Plaintiff–Growers represented by Malone in the underlying action have not alleged direct injury with respect to half of the alleged predicate acts. The remaining acts have not been alleged with enough particularity for me to determine whether Plaintiff–Growers have alleged direct injury, and therefore proximate cause. In any event, the RICO claims would still be denied as futile because of Plaintiff–Growers' failure to allege a distinct enterprise.

*(v) Litigation Immunity* [23]

DuPont argues that the proposed RICO claims should also be denied based on litigation immunity. In *Florida Evergeen I,* I examined a case which held that any act related to a judicial proceeding is absolutely immune from a subsequent claim in another lawsuit. *Florida Evergreen I,* 135 F.Supp.2d at 1278–1279, citing *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co.,* 639 So.2d 606 (Fla.1994). Based on this case, I concluded that Plaintiffs' allegations involving improper litigation conduct in another case were barred by Florida's absolute immunity for

---

**23.** I am addressing the litigation immunity doctrine as I discuss Plaintiff–Growers' proposed RICO claims because DuPont argues that this doctrine renders the proposed claims futile. In *Florida Evergreen I,* I disagreed with this argument. The Eleventh Circuit did not address this issue on appeal. Since my ruling, DuPont has submitted cases from other circuits that support its position. As I note in this section, however, there is no Eleventh Circuit case on point. In any event, the issue is not material to my conclusions because I have determined that the proposed RICO claims are denied as futile based on other grounds. *See, e.g., supra* Part I.A.(2)(b)(I).

litigation conduct. *Id., aff'd, Green Leaf,* 341 F.3d at 1302. The Eleventh Circuit affirmed my conclusion. *Id.*

I declined, however, to extend my litigation privilege ruling to Plaintiffs' federal RICO claims even though these claims were based on conduct during prior litigation. *Florida Evergreen I,* 135 F.Supp.2d at 1284–1286. The Eleventh Circuit did not address this issue on appeal. I noted that DuPont had not been able to cite any federal cases specifically holding that litigation conduct by a litigating party in a prior case is entitled to absolute immunity and may not form the basis of a subsequent federal civil RICO claim. *Id.*

Although DuPont has cited a Ninth Circuit case which applies legislative immunity to federal RICO claims,[24] DuPont has still been unable to cite an Eleventh Circuit or Florida state case dismissing federal or state RICO claims based on immunity for litigation conduct. DuPont argues that *United States v. Pendergraft,* 297 F.3d 1198 (11th Cir.2002), supports its position that the Eleventh Circuit would apply the litigation privilege to RICO claims. *Id.* That case, however, involved the Hobbs Act, which imposes criminal sanctions on those who affect interstate commerce by extortion. *Id.* at 1205, citing 18 U.S.C. § 1951(a). The indictment alleged that the defendants had conspired to extort money from Marion County by threatening to file an amended complaint in an action against the County, unless the County settled with them. *See Pendergraft,* 297 F.3d at 1205. The court held that a threat to file litigation is not "wrongful" within the meaning of the Hobbs Act. *Id.* at 1208. In the course of its discussion, the court noted with approval cases that have expressed concern over allowing civil RICO claims

based on predicate acts of extortion for threats to litigate. *Id.* at 1207–08. Nevertheless, the court emphasized that its "holding is a narrow one" regarding only the Hobbs Act's inapplicability to threats to litigate. *Id.* at 1208. Further, the Florida state case Dupont cites does not discuss RICO at all. *See Boca Investors Group, Inc. v. Potash,* 835 So.2d 273 (Fla. 3rd DCA 2002). Rather, this case dismissed a tortious interference claim and denied as futile a proposed statutory antitrust claim because the litigation privilege barred these claims. *Id.*

My own research has also failed to yield a controlling case applying the litigation privilege to RICO claims. The Eleventh Circuit recently discussed the litigation privilege in *Jackson v. BellSouth Telecommunications,* 372 F.3d 1250 (11th Cir. 2004). *Id.* Plaintiffs' claims in that case included federal RICO claims and state law claims of tortious interference and conspiracy to defraud. *Id.* Although the court applied the litigation privilege to bar the state law claims, it dismissed the federal RICO claims for a different reason. *Id.* Thus, the court did not discuss the issue of whether the litigation privilege applies to federal RICO claims.

*(vi) Rules for Pleading RICO Claims and Fraud Claims*

Plaintiff–Growers' pleadings fail to meet basic notice pleading requirements. *See* Fed.R.Civ.P. 8(a) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). This shortcoming is evidenced by their general comment:

> For the purposes of F.R.Civ.P. 9(b), Plaintiff hereby incorporates by reference all RICO case statements (which

---

**24.** Supplemental Memorandum at 17, citing *Chappell v. Robbins,* 73 F.3d 918, 925 (9th Cir.1996) (discussing legislators' absolute common-law immunity against civil suits, in-

cluding RICO suits, for their legislative acts and stating that "[i]n passing RICO, Congress did not evince a 'clear legislative intent' to displace common-law immunities' ").

include discovery responses and communications that DuPont mailed and/or transmitted over wires via facsimile in state and federal courts in multiple jurisdictions), legal memoranda, affidavits, declarations, deposition transcripts, and trial transcripts previously taken or filed by Grower–Claimants in this and other consolidated actions, including those taken or filed in companion actions pending in the United States District Court for the District of Hawai'i.

(Corrigenda at Exh. 5 ¶ 9, Exh. 6 ¶ 9). While stating that they are making this general statement "[f]or the purposes of F.R.Civ.P. 9(b)," which requires fraud to be pled with particularity, Plaintiff–Growers argue in their Reply that predicate acts are not required to be pled with specificity. This argument clearly ignores the fact that two of the alleged predicate acts involve fraud.[25] I need not decide, however, whether Plaintiff–Growers have alleged fraud with particularity because the fraud claims are denied as futile for the other reasons stated in this section.

*(vii) Conclusion*

The proposed RICO claims are denied as futile because they do not allege a distinct enterprise. Further, they do not allege reasonable reliance or direct injury. Because the Florida RICO claims are futile, Count II, the conspiracy to violate RICO, is also denied as futile.

*(c) Remaining Counts*

Plaintiff–Growers' remaining counts are essentially the same types of claims that were dismissed in *Florida Evergreen I* and *Florida Evergreen II*. Counts III through IX allege the following: fraudulent concealment (Count III), intentional nondis-

closure of a material fact (Count IV), fraudulent inducement to settle (Count V), fraud on the court (Count VI), civil conspiracy (Count VII), abuse of process (Count VIII), spoliation (Count IX), and federal racketeering violations (Count X). These claims mirror the claims which were dismissed in 98–2256: fraud (Count I), intentional nondisclosure of material facts (Count II), fraudulent inducement to settle (Count III), fraud on the court (Count IV), civil conspiracy (Count VIII), abuse of process (Count IX), spoliation (Count XII), and federal racketeering violations (Counts VI and VII). Plaintiff–Growers fail to explain in their Motion or Reply why I should allow these claims despite my earlier rulings, which have since been affirmed by the Eleventh Circuit in *Green Leaf*. Thus, the proposed amended claims are denied as futile for the same reasons these claims were dismissed in *Florida Evergreen I, Florida Evergreen II*, and *Green Leaf*: (1) litigation privilege bars claims related to a judicial proceeding, (2) Plaintiff–Growers cannot state a claim for reasonable reliance, (3) fraud on the court cannot be maintained in a separate court, (4) Plaintiff–Growers cannot state a claim for spoliation, and (5) Plaintiff–Growers' federal RICO claims fail to allege reasonable reliance and direct injury.

*(i) Litigation Privilege: Counts III, IV, V, VII, and VIII*

Counts III, IV, V, VII, and VIII are all based on conduct that took place either during litigation (Corrigenda at Exh. 5 ¶¶ 23–26, 28, 29, Exh. 6 ¶¶ 23–26, 28, 29) or during an official proceeding brought by the Florida Department of Agriculture and Consumer Services (Corri-

---

**25.** Further, Plaintiff–Growers general incorporation of various materials ignores Local Rule 15.1, which states, "Any amendment to a pleading ... must, except by leave of court, reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference." Nevertheless, failure to comply with this Local Rule is not a ground for denial of a motion to amend. Local Rule 15.1.

genda at Exh. 5 ¶¶ 27, Exh. 6 ¶¶ 27). Thus, as explained below, these claims, except to the extent that they arise out of the official proceeding brought by the Department of Agriculture and Consumer Services, are barred by the absolute immunity Florida grants to conduct that occurred during a judicial proceeding. *See supra* Part I.A.(1)(e), discussing *Florida Evergeen I*, 135 F.Supp.2d at 1278–1283, *aff'd, Green Leaf,* 341 F.3d at 1302–1304. To the extent the claims arise out of the official proceeding referred to in paragraph 27, Plaintiff–Growers do not allege that they were a party to that proceeding and thus fail to allege a direct enough injury to satisfy proximate cause requirements. *See supra* Part I.A(2)(b)(iii), discussing *Florida Evergeen II,* 165 F.Supp.2d at 1354–1356, *aff'd, Green Leaf,* 341 F.3d at 1307–1308.

In *Florida Evergreen I,* I held that those counts in plaintiff's complaint alleging fraud (Count I), intentional nondisclosure of material facts (Count II), fraudulent inducement to settle (Count III), rescission and damages for fraud (Count V), conspiracy (Count VIII), abuse of process (Count IX), infliction of emotional distress (Count X), interference with prospective economic advantage (Count XI), and violation of the Florida Deceptive and Unfair Trade Practices Act (Count XIII) were based on DuPont's alleged misconduct during the underlying judicial proceedings, and were therefore barred by DuPont's absolute immunity for its litigation conduct under the rule announced by the Florida Supreme Court in *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Insurance Company,* 639 So.2d 606 (Fla.1994). *Florida Evergreen I,* 135 F.Supp.2d at 1278–83. The Eleventh Circuit affirmed this ruling. At oral argument in this case, Plaintiff–Growers argued that this rule, as interpreted subsequently by a split panel of the Fourth District Court of Appeals in *Ingalsbe v. Stewart Agency,* 869 So.2d 30 (2004), should not bar those counts of their complaints which duplicate the above counts in *Florida Evergreen I.* I am not persuaded.

*Levin* began with a civil action in state court in which one party moved to disqualify the law firm representing the opposing party upon the moving party's representation that it would call as witnesses at trial members of the firm with knowledge material to the underlying claim. *Levin,* 639 So.2d at 607. The trial court granted the motion for disqualification and the moving party failed to call these individual attorneys as witnesses. *Id.* The law firm then filed suit in federal court alleging that the moving party had tortiously interfered with the business relationship between the law firm and its client. *Id.* The federal district court dismissed this claim, and on appeal the Eleventh Circuit certified to the Florida Supreme Court the following issue: whether certifying to a trial court an intent to call opposing counsel as a witness at trial in order to obtain counsel's disqualification, and later failing to subpoena and call counsel as a witness at trial, is an action that is absolutely immune from a claim of tortious interference with a business relationship by virtue of Florida's litigation privilege. *Id.* In response, the Florida Supreme Court concluded "that absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior such as the alleged misconduct at issue, so long as the act has some relation to the proceeding." *Id.* at 608. Applying this clear holding in *Florida Evergreen I,* I concluded that DuPont's alleged misconduct, "although perhaps egregious and damaging to Plaintiffs, [was] definitely related to other judicial proceedings and that DuPont [was] therefore im-

mune from civil liability for its actions." 135 F.Supp.2d at 1283. The Eleventh Circuit affirmed this conclusion in *Green Leaf.* Notwithstanding *Ingalsbe,* I conclude that Plaintiff–Growers' claims are now similarly barred by the rule announce in *Levin.*

*Ingalsbe* involved a claim for tortious interference with a contract. In that case, a lawyer and a client agreed in writing to a fee with three different alternatives for calculating the actual amount due on a lawsuit plaintiff had filed against an automobile dealer. *Id.* at 30. The dealer and the client settled the claim, and the terms of the settlement provided that the dealer would pay a different amount in attorney's fees than the client and lawyer had agreed to prior to suit. *Id.* The lawyer sued the dealer for interfering with his fee agreement. *Id.* On appeal, the dealer argued that the lawyer's intentional interference with contractual relationship claim was barred absolutely by the "litigation privilege." *Id.*

The court of appeals rejected that argument and distinguished *Levin.* The court analyzed comparatively the interests of the parties seeking to assert the litigation privilege in each case and found that unlike the interest at issue in *Levin,* i.e., allowing litigants to use their best tactical judgment in the prosecution or defense of a lawsuit without fear of having to defend their actions in a subsequent civil action, the *Ingalsbe* litigant's interest in settling the underlying civil action did not "compel a corollary right to interfere with a fee contract between one of the settling parties." *Id.* at 33. By comparison, the *Levin* plaintiff's interest was sufficiently important to warrant immunity "even though it resulted in the attorney's disqualification from the case." *Id.* at 32.

Without deciding the precise way in which *Ingalsbe* narrowed the rule announced in *Levin,* I conclude that the litigation privilege announced by the latter

applies to bar Plaintiff–Growers' claims in Counts III, IV, V, VII and VIII for at least two reasons. First, unlike the plaintiff in *Ingalsbe,* the Plaintiff–Growers in this case did not have contractual rights which were affected adversely by DuPont's alleged misconduct. Thus, there is no need to find a corollary right of DuPont's against which I can balance Plaintiff–Growers' rights. *Ingalsbe* stands for the narrow proposition that a tortious interference with contract claim may arise from settlement negotiations or agreements because such settlement activities are outweighed by the interest in preserving contractual rights. The litigation privilege does not confer immunity from such claims. However, the countervailing interest which was dispositive in the judgment of the Fourth District Court of Appeals, namely the *Ingalsbe* plaintiff's contractual rights vis-a-vis its client, is simply nonexistent in this case. Second, the misconduct alleged in this case is properly compared to that at issue in *Levin* because, as I concluded in *Florida Evergreen I,* DuPont's alleged tortious acts consisted of misrepresentations which are analytically similar to the defamatory torts which were initially immune under the litigation privilege and analyzed by the *Levin* court.

My interpretation comports with the Eleventh Circuit's recent opinion in *Jackson,* 372 F.3d 1250. *Id.* In that case, the court stated that the litigation privilege applied to alleged misconduct defendant had committed during settlement proceedings. *Id.* at 1275. In distinguishing *Ingalsbe,* the Eleventh Circuit explained as follows:

In that case, a split panel of Florida's Fourth District Court of Appeals held that the litigation privilege did not bar a lawyer's claim for tortious interference with an attorneys-fees contract brought against an automobile dealer that settled a claim with the lawyer's client. *Id.* at

1276. We are unpersuaded by the appellants' broad reading of *Ingalsbe,* however, since that case is plainly distinguishable from this one. The claim in *Ingalsbe* alleged interference in the lawyer's professional or business activities, as is generally necessary to support a tortious interference claim. *See, e.g., Garrison v. Thomas Mem. Hosp. Ass'n,* 190 W.Va. 214, 438 S.E.2d 6, 14 (1993) ("The type of injury alleged in an action for tortious interference ... is damage to one's business or occupation." (emphasis added)). The rationale underlying Ingalsbe is not implicated here, where the appellants have not alleged any interference with their occupations or other professional activities.

*Id.* Accordingly, *Ingalsbe* does not alter my reasoning that Counts III, IV, V, VII, and VIII would be barred by litigation privilege. Accordingly, these proposed Counts are denied as futile.

#### (ii) Reasonable Reliance: Counts III, IV, and V

Counts III, IV, and V are also futile because they fail to allege reasonable reliance. These three counts sound in fraud: Count III is for fraudulent inducement, Count IV is for intentional non-disclosure of material fact, and Count V is for fraudulent inducement to settle. As I explain in *Florida Evergreen I* and in Part I.A(2)(b)(iii), *supra,* fraud claims must comport with the *Mergens* rule, which require reasonable reliance. Plaintiffs have not sufficiently alleged reasonable reliance because they monitored, considered, and relied upon numerous other Benlate related lawsuits, including *Bush Ranch* and *Kawamata/Tomono (see e.g.,* Corrigenda at Exh. 5 ¶¶ 20, 22, Exh. 6 ¶¶ 20, 22), which were filed against DuPont in the early 1990's, and were culminating in the first trials in 1994. The parties were aware of the stakes involved in such litigation, and, as evidenced by the discovery disputes and allegations of fraudulent discovery conduct in related Benlate cases, the litigation was contentious. Finally, if the parties monitored and relied upon related cases, they knew that certain Benlate actions, such as the action leading to the filing of Case No. 98–2256, included allegations that DuPont committed actual fraud. Accordingly, Plaintiff–Growers cannot allege reasonable reliance.

Counts III, IV, and V fail to state a claim for fraud because these claims do not allege reasonable reliance. Therefore, these proposed Counts are denied as futile.

#### (iii) Fraud on the Court: Count VI

Count VI, fraud on the court, is also denied as futile. In *Florida Evergreen I,* I analyzed a virtually identical count. *Florida Evergeen I,* 135 F.Supp.2d at 1286–1289.[26] Plaintiffs in that case alleged that DuPont's actions constituted a scheme to defraud not only the Plaintiffs, but also the United States District Court and the state courts of Florida and Hawaii. *Id.* I determined, after analyzing *Chewning v. Ford Motor Co.,* 35 F.Supp.2d 487 (D.S.C.1998), which I found persuasive, that "the proper forum in which to assert that a party has perpetrated a 'fraud on the court' is the court which allegedly was a victim of that fraud." *Chewning,* 35 F.Supp.2d at 491 (quoting *Weisman v. Charles E. Smith Management, Inc.,* 829 F.2d 511, 513 (4th Cir.1987)). Just as in the *Chewning* case, Plaintiffs in Case No. 98–2256 did not provide me with any authorities that suggest an independent action for damages in a separate court exists under Rule 60(b), particularly based on fraud on the court. *Id.*

---

**26.** The Eleventh Circuit did not analyze this issue on appeal.

Likewise, in this case, Plaintiff–Growers' proposed Count VI seeks to maintain an independent action for damages in a court that is not the one in which the alleged fraud was committed. Although it also seeks to allege this Count under Florida Rule of Civil Procedure 1.540, the same reasoning applies: in no case has a Florida court allowed a cause of action for fraud on the court under Rule 1.540 in a court that is different from the one in which the fraud was committed. *See Cobourn v. Cobourn,* 436 So.2d 284, 285 (Fla. 5th DCA 1983) (refusing to set a aside a judgment rendered in another court because under Rule 1.540, "[w]hen fraud, mistake, excusable neglect or other factors would permit the setting aside of a judgment, then only the court which rendered the judgment may set it aside ...."). Accordingly, the proposed Count VI is denied as futile.

*(iv) Spoilation: Count IX*

Count IX, the spoilation claim, is also denied based on my previous Orders and the Eleventh Circuit decision. *See Florida Evergeen II,* 165 F.Supp.2d at 1359–1361, *aff'd, Green Leaf,* 341 F.3d at 1308–1309. The elements of a spoliation claim are (1) the existence of a potential civil action; (2) a legal or contractual duty to preserve evidence which is relevant to the potential civil action; (3) destruction of that evidence; (4) significant impairment in the ability to prove the lawsuit; (5) a causal relationship between the evidence destruction and the inability to prove the lawsuit; and (6) damages. *Green Leaf,* 341 F.3d at 1308–1309 (citations omitted). The Eleventh Circuit explained that Plaintiffs' spoliation claim rested more on concealment than actual destruction, even though no Florida case has ever held that concealment of evidence constitutes spoliation. *Id.* To the contrary, the court stated, spoliation is defined as the "destruction" of evidence or the " 'significant and meaning-ful alteration of a document or instrument.' " *Id.* (quoting source omitted). Further, Plaintiffs could not show significant impairment. *Id.* Plaintiffs did not assert that DuPont destroyed evidence essential to the Plaintiffs' case, such as Plaintiffs' own plants or the allegedly defective Benlate that Plaintiffs claim to have applied to their plants. *Id.*

Plaintiff–Growers' proposed amendments do not remedy these defects. They still make allegations regarding DuPont's failure to "reveal[ ] the truth," i.e., DuPont's *concealment,* regarding Costa Rica field tests and Alta Lab results, but Plaintiff–Growers fail to allege that this information was essential to their case. (Corrigenda at Exh. 5 ¶ 19, Exh. 6 ¶ 19). They again fail to allege that DuPont destroyed their own plants or that DuPont destroyed defective Benlate that Plaintiffs applied to their complaints. The proposed amendments do state that "DuPont purposefully concealed, tampered with, manipulated, and/or destroyed certain analytical and field testing evidence, the destruction of which significantly impaired the ability for Plaintiff to prove its claims" (Corrigenda at Exh. 5 ¶ 84, Exh. 6 ¶ 84), but I am not required to accept this conclusory allegation as true. *See Davila v. Delta Air Lines, Inc.,* 326 F.3d 1183, 1185 (11th Cir.2003) ("[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."). Nowhere do the proposed Second Amended Complaints state in more than a conclusory manner that Plaintiff–Growers were significantly impaired in their ability to prove their lawsuits. Thus, the proposed spoilation claim is denied as futile.

*(v) Federal RICO Claims: Counts X and XI*

Finally, Counts X and XI, which allege federal RICO violations, must also

be dismissed as futile. As I discussed in Part I.A(2)(b)(ii), *supra,* Plaintiff–Growers have failed to meet the distinctiveness requirement with respect to the alleged enterprise. This reason alone is enough to deny the proposed federal RICO claims as futile.

Further, Plaintiff–Growers have not alleged reasonable reliance or direct injury. The only predicate acts alleged in these counts are mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343 and obstruction of justice and tampering with witnesses in violation of 18 U.S.C. §§ 1503, 1512. As explained in *Florida Evergreen II* and in Part I.A(2)(b)(iii), *supra,* the mail and wire fraud allegations fail to allege reasonable reliance. With respect to the remaining predicate acts, Plaintiff–Growers fail to allege direct injury and thus do not meet proximate cause requirements. They allege that violations of 18 U.S.C. § 1503 occurred in the following cases: *Bush Ranch, Shady Grove,* and *Caribe Bromelias.* (Corrigenda at Exh. 5 ¶ 29; Exh. 6 ¶ 30). Plaintiff–Growers do not allege that they were parties in these cases. Further, Plaintiff–Growers do not state that they were parties in the cases in which DuPont tampered with witnesses. Thus, Plaintiff–Growers federal RICO claims are denied as futile just as the similar claims in Case No. 98–2256 were denied upon DuPont's motion for judgment on the pleadings. *Florida Evergeen II,* 165 F.Supp.2d at 1349–1356, *aff'd, Green Leaf,* 341 F.3d at 1306–1308.

*(3) Conclusion*

Plaintiff–Growers' Motion to Amend, filed between three and five years after these cases began, after two state supreme courts have answered certified questions, after I issued two lengthy Orders, and after the Eleventh Circuit affirmed these Orders on appeal, are untimely. Even if the Motion had been timely, the proposed claims would be denied as futile.

**B. Ferraro Plaintiffs' Motion to Amend**

Ferraro Plaintiffs filed a Motion to Amend First Amended Complaint (Case No. 97–0059, DE # 329, filed March 9, 2004) which includes as Exhibit 5 a Second Amended Complaint. DuPont's Opposition (Case No. 97–0059, DE # 331, filed April 5, 2004) seeks denial of the Motion on the same grounds it argued that Plaintiff–Growers' Motion to Amend should be denied. Ferraro Plaintiffs have not filed a Reply, and the deadline for doing so has passed. (*See* Report, DE # 444 (setting April 19, 2004 as the deadline for Ferraro Plaintiffs' Reply)). I deny the Motion for the same reasons as Plaintiff–Growers' Motion to Amend is denied. Specifically, the Ferraro Plaintiffs' Motion is untimely and futile.

*(1) Timeliness*

Ferraro Plaintiffs have waited even longer than Plaintiff–Growers to amend their claims. Ferraro Plaintiffs initially filed their actions in state court in 1996. (Case Nos. 97–62, 97–63, Notice of Removal, DE # 1, filed January 10, 1997). Mazzoni Farms filed an Amended Complaint on February 21, 1997. (Case No. 97–62, DE # 8). Ferraro Plaintiffs moved to amend their complaints on July 14, 1997 (Case No. 97–62, DE # 32; Case No. 97–63, DE # 27), and these motions were denied in September 1997. (Case No. 97–62, DE # 38; Case No. 97–63, DE # 34). Six and a half years passed before Ferraro Plaintiffs filed their pending Motion to Amend, which proposes alleging eleven counts for relief in place of the two counts alleged in Mazzoni Farms' Amended Complaint and the one count alleged in Jack Martin Greenhouses' Complaint. Ferraro Plaintiffs have not provided any justification for their delay. Despite the factual differences between their cases and Plain-

tiff–Growers' cases, Ferraro Plaintiffs make virtually identical arguments in support of their Motion. (*Compare* Ferraro Plaintiff's Motion to Amend at 3–6 *and* Plaintiff-Growers' Corrigenda at 4–9 (both arguing that the *Green Leaf* opinion and *Palmas Y Bambu* case prompted their Motions)). Just as these arguments did not persuade me of the timeliness of Plaintiff–Growers' Motion to Amend, they do not convince me that Ferraro Plaintiffs' Motion to Amend is timely. Accordingly, Ferraro Plaintiffs' Motion to Amend is denied.

### (2) Futility

Ferraro Plaintiffs' Motion to Amend is also denied as futile. The proposed Second Amended Complaint includes 98 allegations that are substantially similar to the 98 allegations included in each of Plaintiff–Growers' proposed Second Amended Complaints. (Motion at Exh. 5). Specifically, the Ferraro Plaintiffs allege the exact same eleven claims as Plaintiff–Growers: (1) Count I for Florida Civil Remedies for Criminal Practices violations, (2) Count II for different FCPA violations, (3) Count III for fraudulent concealment, (4) Count IV for intentional nondisclosure of a material fact, (5) Count V for fraudulent inducement to settle, (6) Count VI for fraud on the court in an independent action, (7) Count VII for civil conspiracy, (8) Count VIII for abuse of process, (9) Count IX for spoliation of evidence, (10) Count X for federal racketeering violations, and (11) Count XI for conspiracy to violate 18 U.S.C. Section 1962(c). (*Id.*). Florida law applies to Ferraro Plaintiffs' claims just as it did to Plaintiff–Growers claims. *Green Leaf,* 341 F.3d at 1301 (explaining that

neither the Florida nor the Delaware state courts answered the questions of which substantive law applies to the growers' claims and concluding that Florida law governs). Thus, based on the same law I used to conclude that Plaintiff–Growers' claims would be denied as futile, I conclude that Ferraro Plaintiffs' proposed claims would not survive a motion to dismiss. Accordingly, Ferraro Plaintiffs' Motion to Amend is denied as futile.

## II. DuPont's Motion for Summary Judgment as to Settlement Fraud

Because the Motions to Amend are denied, Plaintiff–Growers' First Amended Complaints and Complaints, Mazzoni Farms' Amended Complaint, and Jack Martin Greenhouses' Complaint remain the operative complaints in this action. DuPont's Motion for Summary Judgment as to the settlement fraud claims seeks to dismiss the claims in these complaints. (Motion for Summary Judgment Dismissing with Prejudice all Settlement Fraud Claims and Defenses, DE # , filed January 13, 2004 and Memorandum of Law, DE # , filed January 13, 2004). DuPont's Motion is based on my previous Orders and the Eleventh Circuit's decision in *Green Leaf.*[27]

DuPont states that the following rules from *Green Leaf* preclude the settlement fraud claims and defenses: (1) litigation privilege, (2) the reasonable reliance rule, (3) the "indirect injury" rule, and (4) the rule that spoliation applies to destruction, not concealment of evidence, and only where the destruction "significantly impairs" the ability to prove the underlying lawsuit. I will address each of these rules as they relate to Plaintiff–Growers and

---

**27.** DuPont's Motion also seeks to dismiss all the settlement fraud defenses asserted by growers who, as defendants in this action, have asserted these defenses in response to the claims against them in DuPont's complaints. I conclude in the next section, however, that DuPont cannot prevail on its claims as a matter of law. *See* Part III. Accordingly, judgment is entered against DuPont on these claims, and the growers' settlement fraud defenses are moot.

Ferraro Plaintiffs. As I explain below, because these claims and defenses are essentially the same claims on which judgment on the pleadings were granted in DuPont's favor, *see Florida Evergreen I* and *II* and *Green Leaf,* summary judgement is granted in DuPont's favor as to its settlement fraud Motion.

## A. Plaintiff–Growers' Claims

Plaintiff–Growers in Case Nos. 98–2242, 98–2243, 98–2244, 98–2245, 98–2246, 98–2247, 98–2248, 98–2249, 98–2254, 99–0336, 99–2307, 99–2308, 99–2309, and 99–2310 make 313 allegations and seek the same thirteen claims for relief as the Plaintiffs in Case No. 98–2256:(1) Count I, fraud; (2) Count II, intentional nondisclosure of material fact; (3) Count III, fraudulent inducement to settle; (4) Count IV, fraud on the court; (5) Count V, rescission and damages for fraud; (6) Count VI, RICO violations; (7) Count VII, conspiracy to violate RICO; (8) Count VIII, conspiracy; (9) Count IX, abuse of process; (10) Count X, infliction of emotional distress; (11) Count XI, interference with prospective economic advantage; (12) Count XII, spoliation; (13) Count XIII, violation of state Deceptive and Unfair Trade Practices Acts. (*See* First Amended Complaint, Case No. 98–2242, DE # 10, filed October 22, 1998; First Amended Complaint, Case No. 98–2243, DE # 3, filed October 22, 1998; First Amended Complaint, Case No. 98–2244, DE # 10, filed October 22, 1998; First Amended Complaint, Case No. 98–2245, DE # 5, filed October 22, 1998; First Amended Complaint, Case No. 98–2246, DE # 5, filed October 22, 1998; First Amended Complaint, Case No. 98–2247, DE # 4, filed October 22, 1998; First

Amended Complaint, Case No. 98–2248, DE # 2, filed October 22, 1998; First Amended Complaint, Case No. 98–2249, DE # 2, filed October 22, 1998; First Amended Complaint, Case No. 98–2254, DE# 10, filed October 22, 1998; Complaint, Case No. 99–0336, DE # 1, filed February 4, 1999; Complaint, Case No. 99–2307, DE # 1, filed August 19, 1999; Complaint, Case No. 99–2308, DE # 1, filed August 19, 1999; Complaint, Case No. 99–2309, DE # 1, filed August 19, 1999; Complaint, Case No. 99–2310, DE # 1, filed August 19, 1999).[28] The remaining Plaintiff–Growers allege the same counts, with the exception that Count X for infliction of emotional distress is omitted. (*See* Complaint, Case No. 00–2771, DE # 1, filed July 31, 2000; Complaint, Case No. 00–2772, DE # 1, filed July 31, 2000; Complaint, Case No. 00–2773, DE # 1, filed July 31, 2000).[29]

Based upon my review of the record and applicable case law, I conclude that summary judgement is warranted against all these claims just as judgment on the pleadings was warranted against the same claims in Case No. 98–2256. Specifically, I grant DuPont's Motion based on the following grounds: (1) litigation immunity applies, (2) the claims do not establish reasonable reliance, (3) the RICO claims do not establish reasonable reliance or direct injury, (4) spoliation applies to destruction, not concealment of evidence, and only where the destruction significantly impairs the ability to prove the underlying lawsuit, and (5) Plaintiff–Growers cannot maintain a separate action for fraud on the court.

**28.** Throughout my analysis of DuPont's Motions for Summary Judgment, I cite to the statements in the complaints as evidence of what the Growers allege, not as evidence that the statements are true.

**29.** When I reference Plaintiff–Growers' Complaints in this section, I will simply cite to the First Amended Complaint in Case No. 98–2242, the Complaint in 99–2307, and the Complaint in Case No. 00–2771 as they represent the rest of the Complaints.

*(1) Litigation Immunity: Counts I, II, III, V, VIII, IX, X, XI, and XIII*

DuPont argues that Counts I, II, III, V, VIII, IX, X, XI, and XIII are based on allegations of conduct alleged to have taken place during the course of and related to any prior lawsuit. DuPont states that summary judgment is warranted because as a matter of Florida and federal law, absolute immunity is afforded to litigation conduct in any subsequent civil action for damages. Plaintiff–Growers did not respond to this argument in their brief.[30]

In *Florida Evergreen I*, I agreed with DuPont's argument that Plaintiffs' state law damage claims based on allegations of conduct alleged to have taken place during the course of and related to any prior lawsuit were barred by absolute immunity for litigation conduct. *Florida Evergreen I*, 135 F.Supp.2d at 1278–1279, citing *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co.*, 639 So.2d 606 (Fla.1994). The background of the *Levin* case is set forth in *Florida Evergreen I*. *Id.; see also supra* Part I.A(2)(c)(i). The *Levin* court held that any act related to a judicial proceeding is absolutely immune from a subsequent claim in another lawsuit. *Florida Evergreen I*, 135 F.Supp.2d at 1278–79, citing *Levin*, 639 So.2d 606. The *Levin* Court went on to state that the decision to grant absolute immunity does not mean that a remedy for a participant's misconduct is unavailable, as "a trial judge has the inherent power to do those things necessary to enforce its orders, to conduct business in a proper manner, and to protect the court from acts obstructing the administration of justice." *Levin*, 639 So.2d at 608–09. Accordingly, DuPont argued that the proper remedy for improper

litigation conduct related to another case is a contempt motion before the trial court, not a separate tort action, and that Florida's absolute immunity for litigation conduct bars all of Plaintiffs' common law state damages claims. *Florida Evergreen I*, 135 F.Supp.2d at 1278–79. I agreed. *Id.* Based on *Levin*, I concluded that Plaintiffs' allegations involving improper litigation conduct in another case were barred by Florida's absolute immunity for litigation conduct. *Id., aff'd, Green Leaf*, 341 F.3d at 1302. The Eleventh Circuit affirmed this conclusion. *Id.*

Plaintiff–Growers in these cases have not disputed that the misconduct allegedly committed by DuPont that forms the basis for the majority of the claims in this lawsuit bears some relation to other judicial proceedings that were going on concurrently to the underlying lawsuit (Statement of Material Facts ¶ 64), just as Plaintiffs in Case No. 98–2256 could not dispute that their claims bore some relation to a judicial proceeding. Regarding the Alta Labs data, Plaintiffs in Case No. 98–2256 alleged that DuPont refused to produce the results and raw data when ordered to do so by the Bush Ranch trial court. *Florida Evergreen I*, 135 F.Supp.2d at 1283. Plaintiff–Growers make the same allegations. (First Amended Complaint ¶¶ 72–88; Complaint, Case No. 99–2307, ¶¶ 71–87; Complaint, Case No. 00–2771, ¶¶ 61–74, 87,). According to Plaintiffs in Case No. 98–2256, DuPont allegedly prepared a false summary of the Alta Labs data, which it presented at trial through its expert at the Bush Ranch trial, who also testified falsely in court. *Florida Evergreen I*, 135 F.Supp.2d at 1283. Plaintiff–Growers make the same allegations. (First Amended Complaint ¶¶ 84–90;

---

**30.** As explained in Part I.A(2)(c)(i), *supra*, Plaintiff–Growers did argue during oral argument that based on *Ingalsbe v. Stewart Agen-* cy, DuPont cannot assert litigation immunity. I have already rejected this argument. *See supra id.*

Complaint, Case No. 99–2307, ¶¶ 83–89; Complaint, Case No. 00–2771, ¶¶ 88–91). Case No. 98–2256 Plaintiffs also alleged that DuPont's attorneys made false statements to the court in the *Billy Lambert v. DuPont* case regarding Alta Labs test results, and failed to correct those false statements. *Florida Evergreen I,* 135 F.Supp.2d at 1283. Plaintiff–Growers make the same allegations. (First Amended Complaint ¶¶ 100–104; Complaint, Case No. 99–2307, ¶¶ 99–103; Complaint, Case No. 00–2771, ¶¶ 97–103). Furthermore, in Case No. 98–2256, DuPont was alleged to have fraudulently concealed Alta Labs test results to the court in the Hawaii Benlate litigation by presenting false testimony and falsely asserting the work-product privilege. *Florida Evergreen I,* 135 F.Supp.2d at 1283. Once again, Plaintiff–Growers make the same allegations. (First Amended Complaint ¶¶ 107–113, 129–134; Complaint, Case No. 99–2307, ¶¶ 106–112, 128–133; Complaint, Case No. 00–2771, ¶¶ 104–135).

Regarding the Costa Rica field tests, Plaintiffs in Case No. 98–2256 alleged that DuPont conducted field tests in Costa Rica in 1992 that showed that Benlate was defective. *Florida Evergreen I,* 135 F.Supp.2d at 1283. Plaintiff–Growers again make the same allegations. (First Amended Complaint ¶ 191; Complaint, Case No. 99–2307, ¶ 206; Complaint, Case No. 00–2771, ¶ 190). According to Plaintiffs in Case No. 98–2256, DuPont then destroyed the results and denied the existence of the field tests in discovery responses and in the courtroom. *Florida Evergreen I,* 135 F.Supp.2d at 1283. These allegations are made by Plaintiff–Growers as well. (First Amended Complaint ¶¶ 191–227; Complaint, Case No. 99–2307, ¶¶ 206–238; Complaint, Case No. 00–2771, ¶¶ 190–222). Plaintiff–Growers claim that the existence of this scheme was uncovered in the *Davis Tree Farms, Inc. v. DuPont* case. *Florida Evergreen I,* 135

F.Supp.2d at 1283; *see also* First Amended Complaint ¶ 218; Complaint, Case No. 99–2307, ¶ 229; Complaint, Case No. 00–2771, ¶ 213.

I conclude as I did in *Florida Evergreen I* that these acts allegedly committed by DuPont were related to other judicial proceedings and that DuPont is therefore immune from civil liability for its actions. *Florida Evergreen I,* 135 F.Supp.2d at 1283. The Eleventh Circuit affirmed my conclusion, stating that "[b]ecause DuPont's alleged misconduct occurred during the Underlying Litigation and during other Benlate litigation, according to *Levin,* Florida law clearly provides an absolute immunity to DuPont for their alleged misconduct." *Green Leaf,* 341 F.3d at 1302–03. Accordingly, judgment is entered in DuPont's favor on Plaintiff–Growers' claims that are based on litigation conduct. These claims include Counts I, II, III, V, VIII, IX, X, XI, and XIII.

*(2) Reasonable Reliance: Counts I, II, III, and V*

DuPont argues as an alternative basis for entering judgment in its favor on Counts I, II, III, and V that Plaintiff–Growers cannot establish reasonable reliance on DuPont's representations during settlement because they were involved in cases in which DuPont had already been accused of fraud. Plaintiff–Growers' Memorandum in Opposition argues that the reasonable reliance rule does not bar their claims because they were represented by a different attorney and were involved in different cases than the Plaintiffs in Case No. 98–2256. Thus, they argue that they were merely monitoring the underlying lawsuit involving those Plaintiffs, and they were not in any more of an antagonistic relationship than other parties to a suit. I conclude that these minor differences do not distinguish Plaintiff–Growers' cases from Case No. 98–2256.

Plaintiff–Growers cannot establish reasonable reliance. In *Mergens,* the Eleventh Circuit established a bright line rule regarding reliance: when negotiating or attempting to compromise an existing controversy over fraud and dishonesty it is unreasonable to rely on representations made by the allegedly dishonest parties. *Green Leaf,* 341 F.3d at 1304. (citations omitted). Reliance was unjustified as a matter of law in *Mergens* because the plaintiffs were sophisticated "players" in the industry and were represented by counsel, the parties had been in an adversarial relationship since well before the execution of the agreement, and the existing controversy between the parties involved allegations of fraud and/or dishonesty by the defendants. *Id.* (citations omitted).

Likewise, in Case No. 98–2256, the Eleventh Circuit explained that Plaintiffs were represented by counsel throughout the Underlying Litigation, that counsel monitored other Benlate cases throughout the country, and that counsel knew that DuPont had been accused of discovery abuses in other cases. *Id.* Further, the Eleventh Circuit explained that the parties were in an antagonistic relationship, in which the settled litigation involved claims of actual fraud against DuPont, as well as ongoing accusations of discovery fraud and other dishonest litigation conduct. *Id.* According to the court, both the past and current claims involved the same type of fraudulent conduct. *Id.*

In these cases, Plaintiff–Growers do not dispute that they were represented by counsel in the underlying settlement agreements. (Plaintiff–Growers Disputed Material Facts, DE # 449, filed April 20, 2004, ¶ 32). Further, they do not dispute

that with the exception of Plaintiff–Growers in Case No. 99–2308 and 99–2310 (*see* Statement of Material Facts ¶ 14), they were represented by Sheehe & Vendittelli or by Malone (*See* DuPont's Statement of Material Facts ¶ 13).[31] Both counsel had accused DuPont of fraud prior to the execution of the first settlement agreements in 1994. Specifically, in a trial in Florida state court on December 21, 1993, Sheehe engaged in the following discussion with the court:

> Mr. Sheehe: [DuPont] withheld this information from the public, they made false statements to the public whether sulfonylureas were contained in the product. We are going to have all kinds of people get up on the witness stand and say there are no sulfonylureas in this product, that they never found it, which is just not true. This all goes to that.
>
> The Court: You are saying by them destroying results and documentation there is an inference that they are hiding something?
>
> Mr. Sheehe: Not an inference, it is a fact. That's our position, with all due respect.

(Ocariz Declaration at Exh. H). Also prior to the 1994 settlements, Malone joined in a motion to seeking to vitiate DuPont's attorney-client privilege claims on the allegation that DuPont "was fraudulent in [its] recalls and in [its] dissemination of information, both before and after the recalls." (First Raider Declaration at Exh. BB). At a January 6, 1994 hearing on the motion, the plaintiffs argued that DuPont was engaged in an "ongoing fraud" to conceal evidence of Benlate contamination. (*Id.* at Exh. DD). Plaintiffs' counsel stated,

---

**31.** Although Plaintiff–Growers dispute Du-Pont's statement that Sheehe & Vendittelli and Malone served as co-counsel during some of the underlying actions, they do not dispute that they were represented by either Sheehe & Vendittelli or Malone in the underlying actions. (*See* Disputed Material Facts ¶ 2).

"What [DuPont] is doing is indeed covering up the actual finding of sulfonylurea herbicides in [its] product, and this is part of the fraud." (*Id.*). Further, counsel argued, "If the Court reads those [documents] closely, you will notice of a constant pattern by DuPont employees of fixing data." (*Id.*). Finally, counsel stated, "What we are trying to show the Court is that actually this was an ongoing fraud." (*Id.*). Thus, Plaintiff–Growers' attorneys, whether the attorneys were from Sheehe & Vendittelli or the Malone law firm, accused DuPont of fraud in other cases in some cases, in the underlying actions, before the settlements in 1994.

Further, all Plaintiff–Growers, including the ones who were not represented by Sheehe & Vendittelli or Malone, admit that they monitored the *Bush Ranch* trial (Plaintiff–Growers Disputed Material Facts, DE # 449, filed April 20, 2004, ¶ 32), in which Judge Elliot held that DuPont intentionally withheld documents relating to contamination of Benlate and in which DuPont's attorneys were accused of making fraudulent misrepresentations to cover up alleged defects in Benlate (*see id.* at ¶ 13 (admitting that *Bush Ranch* counsel made allegations of misconduct during that case); DuPont's Concise Statement of Facts, DE # 420, filed January 13, 2004). Although Plaintiff–Growers argue in their Disputed Material Facts that prior allegations of fraud did not involve the ALTA or Costa Rica tests (¶ 13), these prior accusations of fraud involve the same type of fraud alleged in this case, that DuPont withheld information and made misrepresentations regarding Benlate's defects. Because Plaintiff–Growers knew that DuPont was accused of committing fraud and other dishonest litigation conduct to cover up alleged defects in Benlate, based on the *Mergens* rule and the *Green Leaf* ruling, they could not have reasonably relied on DuPont's representations regarding Benlate's defects. Thus, judgment is entered in DuPont's favor as to Plaintiff–Growers' claims for fraud, Counts I, II, III, and V.

### (3) RICO Claims: Reasonable Reliance and Direct Injury

Summary judgment is also entered in DuPont's favor on Plaintiff–Growers' RICO claims, Counts VI and VII. The undisputed record shows that Plaintiff–Growers cannot prove reasonable reliance or direct injury.[32]

### (a) Reasonable Reliance

 Plaintiff–Growers allege that DuPont violated RICO by committing multiple acts of mail and wire fraud. (*See, e.g.,* First Amended Complaint ¶ 280). As explained above, however, DuPont has proved that Plaintiff–Growers cannot show reasonable reliance. The Eleventh Circuit confirmed that "to establish a RICO fraud claim Plaintiffs must make the same showing of reasonable reliance that is required for establishing common law fraud." *Green Leaf,* 341 F.3d at 1306. Thus, applying the *Mergens* rule and *Green Leaf* ruling to the facts recited in the previous section requires that judgment be entered in DuPont's favor on the RICO violations based on predicate acts of mail and wire fraud.

### (b) Direct Injury

 The only other predicate acts alleged are obstruction of justice and tam-

---

**32.** Although DuPont does not argue that Plaintiff–Growers cannot show a distinct RICO enterprise as a matter of law, I note that based on the record, the only participators in the RICO enterprise consist of DuPont, its employees, and its agents. Thus, Plaintiff–Growers cannot establish a distinct enterprise as a matter of law. *See supra* Part I.A.(2)(b)(iii). This is an alternate reason for granting DuPont's Motion for Summary Judgment with respect to the RICO claims.

pering with a witness. (*See, e.g.,* First Amended Complaint ¶ 280). DuPont argues that Plaintiff–Growers were not parties in the cases in which these alleged predicate acts occurred. Thus, DuPont states, they cannot allege a direct enough injury to satisfy proximate cause requirements. Plaintiff–Growers respond that Plaintiff–Growers Richard Hattaway and Caribe Bromelias, Case No. 99–2310, were parties in one of the cases in which DuPont committed RICO violations, thus undercutting DuPont's indirect injury argument.

Based on relevant case law and the record before me, I conclude that Plaintiff–Growers have not established direct injury. The Eleventh Circuit affirmed judgment on the pleadings in DuPont's favor when faced with substantially similar claims of obstruction of justice and witness tampering in *Green Leaf,* 341 F.2d at 1307–08. *Id.* The Eleventh Circuit explained that federal obstruction and witness intimidation claims are only applicable to federal proceedings. *Id.* (citation omitted). The only federal case in which Plaintiffs in Case No. 98–2256 alleged that any of the predicate acts took place was the Bush Ranch case. *Id.* Plaintiffs were not parties to the *Bush Ranch* case, but alleged that it was one of the cases that their attorneys were monitoring closely. *Id.* The Eleventh Circuit explained, however, that "a plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [is] generally said to stand at too remote a distance to recover." *Id.,* quoting *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 268–69, 112 S.Ct. 1311, 1318, 117 L.Ed.2d 532 (1992). Thus, predicate acts alleged to have occurred during federal proceedings in which one is not a party do not allege a direct enough injury to meet proximate cause requirements. *Id.*

Plaintiff–Growers' obstruction of justice and tampering with a witness claims are based on the *Bush Ranch* trial, in which none of the Plaintiff–Growers were parties. (*See* Concise Statement of Material Facts ¶ 70, citing First Amended Complaint ¶¶ 52–97). Plaintiff–Growers argue that DuPont's illegal activities occurred in the *Shady Grove* and *Caribe Bromelias* lawsuits; thus, they contend, Plaintiff–Growers in Case No. 99–2310 meet direct injury and proximate cause requirements. (*See* Disputed Material Facts ¶ 37). Plaintiff–Growers in that case, however, did not make any allegations regarding obstruction of justice in relation to *Caribe Bromelias* in their Complaint. These Plaintiff–Growers are not permitted to amend its Complaint through its opposition summary judgment. *See In re Andrx Corp., Inc.,* 296 F.Supp.2d 1356, 1367 (S.D.Fla.2003) ("The undersigned will not entertain Plaintiffs' new theory raised for the first time in response to Defendants' motion for summary judgment as it is not properly before the Court."), citing *Shanahan v. City of Chicago,* 82 F.3d 776, 781 (7th Cir.1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment"). Thus, based on the Complaint, which only alleges obstruction of justice and witness tampering in *Bush Ranch,* and based on the record, in which it is undisputed that Plaintiff–Growers were not parties in *Bush Ranch,* Plaintiff–Growers have not met direct injury requirements.

No reasonable trier of fact could conclude based on this record that Plaintiff–Growers can demonstrate justifiable reliance on DuPont's acts of mail and wire fraud or proximate cause between the alleged acts of obstruction of justice and witness tampering and their injuries. Thus, Plaintiff–Growers cannot establish any valid predicate acts. Absent valid predicate acts, there can be no RICO vio-

lations. Accordingly, summary judgment is entered in DuPont's favor on Counts VI and VII.

### (4) Spoilation: Count XII

DuPont argues that judgment should be entered in its favor on the spoliation claims for the same reasons my previous Orders entered, and *Green Leaf* affirmed, judgment in their favor as to the spoliation claims: (1) Plaintiff–Growers allege concealment, rather than destruction, of evidence, and (2) the effect of any alleged destruction would only be cumulative. Plaintiff–Growers do not respond to these arguments. My own review of the record and relevant case law leads me to enter summary judgment in DuPont's favor as to the spoliation claims.

■■■ The elements of a spoliation claim are (1) the existence of a potential civil action; (2) a legal or contractual duty to preserve evidence which is relevant to the potential civil action; (3) destruction of that evidence; (4) significant impairment in the ability to prove the lawsuit; (5) a causal relationship between the evidence destruction and the inability to prove the lawsuit; and (6) damages. *Green Leaf,* 341 F.3d at 1308–1309 (citations omitted). The Eleventh Circuit explained that Case No. 98–2256 Plaintiffs' spoliation claim rested more on concealment than actual destruction, even though no Florida case has ever held that concealment of evidence constitutes spoliation. *Id.* To the contrary, the court stated, spoliation is defined as the "destruction" of evidence or the " 'significant and meaningful alteration of a document or instrument.' " *Id.* (quoting source omitted). Further, Plaintiffs could not show significant impairment. *Id.* Plaintiffs did not assert that DuPont destroyed evidence essential to the Plaintiffs' case, such as Plaintiffs' own plants or the allegedly defective Benlate that Plaintiffs claim to have applied to their plants. *Id.*

Likewise, there is no evidence of significant impairment in the record before me. In response to DuPont's assertion that no reasonable trier of fact could conclude, based on this record, that DuPont's concealment significantly impaired Plaintiff–Growers' ability to prove their suits, Plaintiff–Growers cite the First Amended Complaint and the Malone Deposition. (Disputed Material Facts ¶ 38). Even if I were required to consider the statements in the First Amended Complaint true rather than mere allegations at the summary judgment stage, the referenced statements fail to mention significant impairment, as do the remaining allegations in the complaints. (*See, e.g.,* First Amended Complaint ¶¶ 296–298). Further, the Malone deposition simply states that in a products liability case, testing by the defendant is "one of the most valuable pieces of evidence that you can have." (Plaintiff–Growers Exh. 17 at 149–151). Under the *Green Leaf* decision, this evidence fails to establish significant impairment. Rather, the Eleventh Circuit specifically stated evidence such as the following was necessary: evidence that DuPont destroyed Plaintiff–Growers' plants or that DuPont destroyed defective Benlate that Plaintiff–Growers applied to their plants. *Green Leaf,* 341 F.3d at 1308–1309. Accordingly, based on the record before me, which is devoid of any evidence of significant impairment, summary judgment is granted in DuPont's favor as to the spoliation claims.

### (5) Fraud on the Court: Count IV

Judgment is entered in DuPont's favor on Count IV, fraud on the court, for the same reason judgment was entered on the same claim in my previous Orders: fraud on the court cannot be brought in an independent action. In *Florida Evergreen I,* I analyzed a count a substantially similar to Plaintiff–Growers' fraud on the court Counts. *See Florida Evergeen I,* 135

F.Supp.2d at 1286–1289.[33] Plaintiffs in that case alleged that DuPont's actions constituted a scheme to defraud not only the Plaintiffs, but also the United States District Court and the state courts of Florida and Hawaii. *Id.* Thus, they sought relief under a claim labeled "Fraud on the Court" and "Independent Action Recognized in FRCP Rule 60(b)." *Id.* I granted judgment on the pleadings in DuPont's favor as to this count. *Id.*

Federal Rule of Civil Procedure 60, entitled "Relief From Judgment or Order," states as follows:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; . . . or (6) any other reason justifying relief from the operation of the judgment. The motion shall be [**66] made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. . . . This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court.

Fed.R.Civ.P. 60(b).

I determined, after analyzing *Chewning v. Ford Motor Co.,* 35 F.Supp.2d 487 (D.S.C.1998). which I found persuasive, that "the proper forum in which to assert that a party has perpetrated a 'fraud on the court' is the court which allegedly was a victim of that fraud." *Chewning,* 35 F.Supp.2d at 491 (quoting *Weisman v. Charles E. Smith Management, Inc.,* 829 F.2d 511, 513 (4th Cir.1987)). Plaintiffs in Case No. 98–2256 did not provide me with any authorities that suggest an independent action for damages in a separate court exists under Rule 60(b), particularly based on fraud on the court. *Id.* Accordingly, I granted DuPont judgment on Plaintiffs' claim that DuPont schemed to defraud not only the Plaintiffs, but also the United States District Court and the state courts of Florida and Hawaii. *Id.*

Plaintiff–Growers' fraud on the court claims suffer the same defects. They allege that DuPont schemed to defraud different courts in different actions, not this Court. Accordingly, I conclude that Plaintiff–Growers cannot show fraud on the court as a matter of law. Thus, there is no issue left for the trier of fact as to Count IV, and summary judgment is granted in DuPont's favor on the fraud on the court claims.

## B. Ferraro Plaintiffs' Claims

Summary judgement is also warranted against Ferraro Plaintiffs' claims. I will provide a brief background of Ferraro Plaintiffs' cases before explaining why summary judgment is granted in DuPont's favor as to all Ferraro Plaintiffs' claims.

### (1) Factual Differences in Ferraro Plaintiffs' Cases

The key difference between Ferraro Plaintiffs' cases and Plaintiff–Growers' cases is that one Ferraro Plaintiff, Mazzoni Farms, executed a General Release of All Claims on May 6, 1992, prior to any litigation. (*See* Ferraro Plaintiffs' Opposition

---

**33.** The Eleventh Circuit did not analyze this issue on appeal. Accordingly, it is not the law of the case.

Exh. A at Composite Exh. B). In the Release, Mazzoni Farms agreed to release DuPont from all claims relating to the use or application of Benlate in exchange for $3,837,126.00. (*Id.*). Despite the Release, Mazzoni Farms filed Benlate-related claims against DuPont. (Second Raider Declaration at Exh. 12). Jack Martin, formerly known as M & M Ornamentals, filed similar claims against DuPont. (*Id.*). Both Ferraro Plaintiffs were represented by Sheehe & Vendittelli in these underlying actions. (*Id.*). Ferraro Plaintiffs settled their claims against DuPont in May 1994. (*See* Ferraro Plaintiffs' Opposition Exh. A at Composite Exh. A; Exh. B at Composite Exh. A).

Ferraro Plaintiffs' complaints allege that DuPont's fraudulent conduct caused them to settle their claims in May 1994 for far less than their value. (*See* Ferraro Plaintiffs' Opposition Exh. A; Exh. B). Mazzoni Farms also seeks relief under a second count, alleging that DuPont's fraud caused it to settle its claims in May 1992 for far less than the full value of the claims.

*(2) Ferraro Plaintiffs' Count I: Alleged Fraud in Connection with May 1994 Settlements*

Summary judgment is entered in DuPont's favor on Ferraro Plaintiffs' count for fraud in connection with the May 1994 settlements for the same reasons Plaintiff–Growers' fraud claims were denied: Ferraro Plaintiffs have failed to establish reasonable reliance. Ferraro Plaintiffs urge me to ignore *Green Leafs* rulings on this issue and apply other court's decisions, such as the Hawaii Supreme Court opinion's on the reasonable reliance rule in *Matsuura*. I am bound, however, by the Eleventh Circuit's rulings and interpretations of Florida law in *Mergens* and in *Green Leaf*.

I have already explained that the *Mergens* rule and the Eleventh Circuit's application of the rule to similar facts in *Green Leaf*. In *Green Leaf*, the Eleventh Circuit explained that Plaintiffs were represented by counsel throughout the Underlying Litigation, that counsel monitored other Benlate cases throughout the country, and that counsel knew that DuPont had been accused of discovery abuses in other cases. *Id.* Further, the Eleventh Circuit explained that the parties were in an antagonistic relationship, in which the settled litigation involved claims of actual fraud against DuPont, as well as ongoing accusations of discovery fraud and other dishonest litigation conduct. *Id.* According to the court, both the past and current claims involved the same type of fraudulent conduct. *Id.*

The *Mergens* rule applies to bar Ferraro Plaintiffs' fraud Count as well. It is undisputed that Ferraro Plaintiffs were represented by Sheehe & Vendittelli in their underlying actions. (Second Raider Declaration at Exh. 12). It also undisputed that before Ferraro Plaintiffs had settled their claims, Sheehe accused DuPont of fraud. (Ocariz Declaration at Exh. H). Specifically, in a trial in Florida state court on December 21, 1993, Sheehe engaged in the following discussion with the judge:

> Mr. Sheehe: [DuPont] withheld this information from the public, they made false statements to the public whether sulfonylureas were contained in the product. We are going to have all kinds of people get up on the witness stand and say there are no sulfonylureas in this product, that they never found it, which is just not true. This all goes to that.
>
> The Court: You are saying by them destroying results and documentation there is an inference that they are hiding something?
>
> Mr. Sheehe: Not an inference, it is a fact. That's our position, with all due respect.

(*Id.*). Thus, the parties were in an antagonistic position, and they knew of fraud accusations in other cases that are similar to the fraud allegations in Ferraro Plaintiffs' cases, namely, that DuPont knew that Benlate was contaminated yet it concealed this knowledge or made misrepresentations regarding it. Based on these facts, Ferraro Plaintiffs cannot have reasonably relied in DuPont's alleged fraudulent conduct when executing the settlement agreement in May 1994. Accordingly, judgment is entered for DuPont on Ferraro Plaintiffs' Count I, relating to the 1994 settlement.

*(3) Mazzoni Farms' Count II: Allegations of Fraud in Connection with 1992 Release*

Mazzoni Farms argues that it was fraudulently induced to enter into a settlement dated May 6, 1992 which was not the product of litigation. Mazzoni Farms states that because there was no litigation leading up to the 1992 settlement, there were no similar charges of fraud against DuPont at that time, so it was not unreasonable for Mazzoni Farms to rely on DuPont's representations during the settlement. Based on the record before me, however, summary judgment against Mazzoni Farms is warranted. Mazzoni Farms has provided no evidence that DuPont committed fraud before the parties settled in 1992. Because there is no evidence of fraud before 1992, no reasonable trier of fact could conclude that DuPont fraudulently induced Mazzoni Farms to settle in 1992.

▇ The elements of an action for fraud in the inducement under Florida law are (1) misrepresentation of a material fact, (2) by someone who knew or should have known of the statement's falsity, (3) with intent that the representation would induce another to rely and act on it, and (4) injury suffered in justifiable reliance on the representation. *Hillcrest Pacific Corp. v. Yamamura,* 727 So.2d 1053, 1055

(Fla. 4th DCA 1999). The fourth element incorporates, in the context of a fraud claim, the general requirement of proximate cause for any tort claim. *See, e.g., Liggett Group, Inc. v. Engle,* 853 So.2d 434, 453 & n. 21 (Fla. 3d DCA 2003) (explaining individualized "causation elements of liability that precluded class certification of fraud and other tort claims"); *Humana, Inc. v. Castillo,* 728 So.2d 261, 265 (Fla. 2d DCA 1999) ("If a plaintiff claims to be misled, but cannot demonstrate a causal connection between the defendant's conduct and the plaintiff's misapprehension, the plaintiff cannot recover.").

▇ Based on the record before me, Mazzoni Farms' fraud claims cannot meet this standard. All the fraud alleged in the record took place after Mazzoni Farms settled its claims with DuPont. Mazzoni Farms settled with DuPont in May 1992. (Ferraro Plaintiffs' Opposition Exh. A at Composite Exh. B). Mazzoni Farms has provided no evidence that DuPont committed fraud. A review of DuPont's exhibits reveal that it was not accused of committing fraud before 1992. (*See, e.g.,* Ocariz Declaration at Exh. H (accusing DuPont of fraud on December 21, 1993)). Fraud that occurred after May 1992 could not have fraudulently induced Mazzoni Farms to settle in May 1992. Accordingly, Mazzoni Farms cannot meet the element of causation with respect to its second count for fraud as a matter of law.

Based on the foregoing, summary judgment is entered for DuPont with respect to Plaintiff–Growers' and Ferraro Plaintiffs' settlement fraud claims. I need not address the Motion with respect to any settlement fraud claims and defenses asserted by Grower Defendants because as explained in the next two section summary judgment on DuPont's claims is entered in favor of Plaintiff–Growers, Ferraro Plaintiffs, and Searcy Denney (*see infra* Part

III.C), and Ferraro Defendants' Motions for Dismissal are granted (*see infra* Part IV). Thus, these cases are closed, and any other motions are denied as moot.

## III. DuPont's Motion for Summary Judgment on the Issue of Breach of Settlement Agreement and Growers' Cross–Motions for Summary Judgment

DuPont filed a Motion for Summary Judgment (DE # 418, filed January 13, 2004) and Memorandum of Law (DE # 419, filed January 13, 2004) regarding its breach of settlement agreement claims and counterclaims against all the growers in this case except DeLuca, against whom it has asserted a separate Motion for Summary Judgment.[34] Growers responded to this Motion in their Oppositions and Cross–Motions for Summary Judgment. (*See* Plaintiff–Growers' Cross–Motion for Summary Judgment on DuPont's claims for breach of settlement agreement, DE # 445, filed April 20, 2004 and Memorandum of Law, DE # 446, filed April 20, 2004; Ferraro Plaintiffs' Opposition, DE # 452, filed April 21, 2004, Cross–Motion for Summary Judgment, DE # 453, filed April 21, 2004, and Memorandum of Law in support of their Cross–Motion, DE # 454, filed April 21, 2004; Searcy Denney's Opposition, DE # 437, filed April 20, 2004 and Cross–Motion for Summary Judgment, DE # 436, filed April 20, 2004). DuPont's Motion for Summary Judgment and Growers' Cross–Motions for Summary Judgment have been fully briefed. For the reasons set forth below, I deny DuPont's Motion and grant the Growers' Cross–Motions for Summary Judgment.

In its Motion for Summary Judgment regarding the breach of settlement issue, DuPont essentially argues that filing settlement fraud claims breached the settlement agreement for two reasons: (1) Growers breached the releases by filing their fraud claims, which were extinguished in the release, and (2) Growers covenanted not to sue for claims related to the settlement, and fraud claims fall under that category. The Delaware and Florida supreme courts, however, have explained that the filing of settlement fraud claims does not breach the release provision of the agreement. Further, the covenant not to sue does not bar the fraud claims under Delaware or Florida law. Accordingly, I deny DuPont's Motion for Summary Judgment as to the breach of settlements issue. Because neither the release nor the covenant not to sue bars the growers from filing their fraud claims, filing these claims did not breach the agreements as a matter of law. Thus, judgment is entered in Growers' favor on DuPont's claims, and Growers' Cross–Motions for Summary Judgment are granted.

### A. Release Provision

I will briefly review the parties' arguments regarding the issue of whether Growers breached the release. I will then explain why I conclude that the Growers did not breach the release.

#### (1) Parties' Arguments

In its Motion for Summary Judgment, DuPont argues that Growers cannot prove a "fraud exception" to the release provision. (Motion at 23–24). DuPont argues that the fraud exception, recognized by the Delaware Supreme Court, has two requirements. (*Id.*). First, the fraud exception applies only if fraud claims can be proved.

---

**34.** I do not reach the Motion for Summary Judgment against DeLuca because DeLuca is one of the Ferraro Defendants who has filed a Motion for Summary Judgment, which I grant in Part IV. In any event, DuPont's argument that DeLuca breached the settlement agreement by filing its fraud claims would be denied for the reasons DuPont's same argument is being denied in this section.

Without fraud, DuPont states, there is no fraud exception. (*Id.*). Second, assuming the releasing party can sustain its burden of proving fraud, the fraud exception can be overcome by showing that the fraud claims were nevertheless within the releasing party's contemplation. (*Id.*). According to DuPont, because (1) the growers cannot prove fraud, and (2) fraud claims were contemplated by the parties at the time the release was executed, the release bars fraud, and Plaintiff–Growers breached the release by filing their claims.

In response, Plaintiff–Growers argue that they did not know about their present claims at the time of settlement and thus never intended to release them. Ferraro Plaintiffs argue that the release does not bar fraud claims. Searcy Denney argues in its Opposition that (1) the settlement agreements do not bar fraud claims because the agreements do not specifically refer to such claims, and (2) whether the fraud claims have merit is irrelevant because under Delaware law, the focus is on what claims are in the parties' contemplation at the time of the release, not on whether these claims turn out to be meritless based on subsequent court decisions.

### (2) Analysis

With the exception of Plaintiff–Growers in Case No. 99–2308 and one set of Ferraro Defendants (Jonathan L. Moore and Patricia L. Moore d/b/a Tomoka Greens International) in Case No. 99–7229, the remaining growers' releases contain a provision stating that the release shall be governed and construed in accordance with Delaware law. (Statement of Material Facts ¶ 50). Plaintiff–Growers in Case No. 99–2308 and Jonathan L. Moore and Patricia L. Moore d/b/a Tomoka Greens executed releases containing Florida choice of law clauses. (*Id.*). Thus, in order to determine whether the growers breached the releases, I have to examine Delaware law and Florida law. I will begin with Delaware law because the majority of Growers executed releases governed by Delaware law.

### (a) The Growers Did Not Breach the Releases Governed by Delaware Law.

The growers did not breach the releases governed by Delaware law because (1) under Delaware law, the releases do not bar fraud claims, and (2) all the growers' claims are fraud claims. Accordingly, DuPont's Motion for Summary Judgment with respect to these growers is denied.

### (i) The Releases Do Not Bar Fraud Claims.

In order for me to examine the releases governed by Delaware law, it is necessary for me to analyze the Delaware Supreme Court's opinion regarding these releases in *E.I. DuPont De Nemours & Co. v. Florida Evergreen Foilage*, 744 A.2d 457 (Del. 1999). When beginning its analysis in *Green Leaf,* the Eleventh Circuit discussed *E.I. Du Pont De Nemours & Co. v. Florida Evergreen Foliage.* These discussions provide a framework for my application of the Delaware case. Accordingly, I will review the Eleventh's Circuit's analysis of the Delaware case before describing that case and its holdings in detail.

### (a) The Eleventh Circuit's Discussion of the Delaware Opinion

The law of the case "doctrine provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Murphy v. F.D.I.C.,* 208 F.3d 959, 965 (11th Cir.2000), citing *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983). This doctrine applies to the Eleventh Circuit's discussion of the Delaware opinion as it relates to Case No. 98–2256.

For the remaining cases, the Eleventh Circuit's discussion is binding precedent.

The Eleventh Circuit begins its *Green Leaf* analysis with an explanation of the Delaware Supreme Court opinion. The Eleventh Circuit stated that the Delaware Supreme Court "held that the release did not bar Plaintiffs' fraudulent inducement claims." *Green Leaf,* 341 F.3d at 1301, citing *Florida Evergreen Foliage,* 744 A.2d at 461. The court then explained that the Florida Supreme Court determined that Delaware law governs the releases containing a choice-of-law provisions, and the court again stated that Delaware court, in turn, "held that the release in question does not bar fraudulent inducement claims." *Id.*

Thus, the Eleventh Circuit twice stated that the Delaware court held that release is not barred, and this is in fact what the Delaware court held. *See infra* Part III. A.(2)(b). The Eleventh Circuit necessarily addressed the threshold question of whether growers' claims were permitted in the first place before analyzing the claims substantively. The court also explained that the choice-of-law provision triggering the application of Delaware law is "narrow and governs only the scope and effect of the release." *Green Leaf,* 341 F.3d at 1301. These statements are a part of the law of Case No. 98–2256 and controlling authority in the remaining cases in which the releases are governed by Delaware law.

Further, the Eleventh Circuit discussed the Delaware and Florida cases rather than its earlier holding in *Kobatake v. DuPont,* 162 F.3d 619 (11th Cir.1998). *Id.* In that case, which involved the same parties and same release, except that the parties agreed that the release was to be construed under Georgia law, the Eleventh Circuit concluded that the fraud claims were barred. *Id.* at 625 ("[The] execution of such all-encompassing releases prohibits [plaintiffs] from suing defendants [for fraudulent inducement]."). Rather than continuing to apply this decision to the same releases (except for the Delaware choice-of-law provision), the Eleventh Circuit examined the Delaware case and determined that under that case, it had to analyze the merit of the claims under Florida law.

DuPont makes much of the fact that in *Florida Evergreen I,* I disagreed with the Delaware court's differentiation between product liability claims and settlement fraud claims. (Post–Hearing Brief at 3, citing *Florida Evergreen I,* 135 F.Supp.2d at 1293). Specifically, I concluded that the Delaware court did not examine the accusations of fraud in the underlying cases (*see id.*), and the Eleventh Circuit affirmed my conclusion (*Green Leaf,* 341 F.3d at 1304). This conclusion, however, simply explains that Florida law governs my substantive analysis of the fraud claims. However, whether these Growers could file their fraud claims despite the release is a question of Delaware law. As the Eleventh Circuit explained in *Green Leaf,* and as I explain in the next section, the Delaware court answered that the release does not bar fraud claims.

*(b) The Delaware Supreme Court Ruling*

■■■ Even if the Eleventh Circuit's discussion was merely considered dicta and not the law of the case (*see* Post–Hearing Brief at 5 (arguing that the Eleventh Circuit's statements regarding the Delaware case are dicta)), the Delaware case itself holds that the releases at issue do not bar fraud. In *E.I. Du Pont De Nemours & Co. v. Florida Evergreen Foliage,* the court examined a question I certified to it in the context of a motion to dismiss filed by DuPont in Case No. 98–2242–CIV–GOLD, one of the Plaintiff-Growers' cases. *See E.I. DuPont De Nemours & Co. v.*

*Florida Evergreen Foilage,* 744 A.2d 457; Order and Certificate of Question of Law to the Supreme Court of the State of Delaware, DE # 55, filed May 7, 1999. DuPont argued that the First Amended Complaint, which alleged various fraud-related claims, should have been dismissed because the settlement agreement barred the claims. (*Id.* at 7). The parties did not dispute that Delaware law applied. (*Id.* at 1). Accordingly, I certified the following question to the Delaware Supreme Court: under Delaware law, does the release in these settlement agreements bar plaintiffs' fraudulent inducement claims? (*Id.*).

The Delaware court answered this question in the negative. *Florida Evergreen Foilage,* 744 A.2d at 465. The court explained that the party seeking enforcement of the release bears the heavy burden of proving that the released fraud claim was within the contemplation of the releasing party. *Id.* at 460. Based on the language of the settlement, DuPont could not meet that burden. *Id.* at 462.

In reaching this conclusion, the court examined the language of the settlement agreement. The court noted that the agreement begins with a specific preamble:

> WHEREAS, Plaintiff has filed suit against Defendant in the civil action identified on Exhibit 1 attached hereto ("the Action") in which Plaintiff has alleged against Defendant various claims related to Plaintiff's purchase and/or use of Benlate fungicide;

*Id.* at 458. This preamble specified the subject matter of the settlement: claims related to the use of Benlate. *Id.* at 460. In contrast, the release is more general:

> In consideration of Defendant's payment of the amount set forth in the authorization previously signed by Plaintiff, Plaintiff hereby releases Defendant from any and all causes of action, claims, demands, actions, obligations, damages, or liability, whether known or unknown, that Plaintiff ever had, now has, or may hereafter have against Defendant, by reason of any fact or matter whatsoever, existing or occurring at any time up to and including the date this Release is signed (including, but not limited to, the claims asserted and sought to be asserted in this action).

*Id.* at 459. The court explained, "in view of the preamble language referring to claims related to the use of Benlate, the release language is arguably ambiguous. Moreover, the release does not purport to release the specific fraud claims alleged in the Present Action." *Id.* at 460. The ambiguity to which the court refers arises from the fact that a general release follows a specific preamble. Accordingly, the court examined two issues to interpret the release: (1) the effect the specific preamble had on the general release, and (2) the absence of a reference to fraud claims in the release.

In addressing the first issue, the court focused on whether the release should be interpreted broadly under its general language versus whether the release should be considered limited by the specific preamble which precedes it. To resolve this ambiguity, the court examined Delaware cases which have held that general words following a specific recital of subject matter will not be given their broadest significance. *Id.* The court stated, "Delaware law is clear that words of general application used in a release 'which generally follow a specific recital of the subject matter concerned are not to be given their broadest significance but will be restricted to the particular matter referred to in the recital.'" *Id.* (quotation omitted).

The particular matter referred to in the preamble is claims related to the use of Benlate. The court concluded that claims related to the use of Benlate do not includes claims related to fraud. In reach-

ing this conclusion, the court noted that the question was certified at the motion to dismiss stage, and explained that this procedural posture required it to accept as true Plaintiffs' allegations of fraud. *Id.* at 460. The court assumed that Plaintiffs could prove the elements of fraud, specifically the following elements: that DuPont knew that its representations were false and that it intended use these representations to induce an action. *Id.* at 461. These misrepresentations necessarily occurred after DuPont manufactured or distributed Benlate. *Id.* Thus, the court focused on the procedural posture of the case to show that the tort of fraud is different from the tort of product liability sequentially and conceptually. *Id.* Because the torts of fraud and product liability differ, a general release following a specific reference to claims related to the use of Benlate cannot be construed to bar claims related to misrepresentations about Benlate. *Id.* at 460–462.

The court also examined the absence of a specific reference to fraud claims in the release. It concluded that this absence limits the scope of the general release in this case. *Id.* The court stated, "At a minimum, if one party is to be held to release a claim for fraud in the execution of the release itself, the release should include a specific statement of exculpatory language referencing the fraud." *Id.* at 461.

In sum, the court placed a heavy burden on DuPont to show that fraud was in the contemplation of the parties at the time of the release. The court examined the language of the settlement to determine whether DuPont could meet that burden. The release begins with a specific recital of a subject matter that is different sequentially and conceptually from the subject matter of fraud. Further, the release does not include a specific reference to fraud claims. Thus, based on the language of

the release, DuPont could not prove that the parties contemplated fraud. There was no reason to look outside the agreement to determine whether DuPont could sustain its heavy burden because the ambiguity in the general release is resolved as a matter of Delaware law: when a general release follows a specific preamble, the release shall be construed narrowly rather than broadly. Accordingly, the court answered the certified question in the negative, and concluded that the release did not bar fraud claims. *Id.* at 465.

DuPont urges me to ignore this conclusion and instead focus on (1) the court's assumption that the growers could prove fraud, and (2) the court's discussion of the contemplation of the parties. Based on these parts of the opinion, DuPont argues that the Delaware "fraud exception" has two elements. First, the fraud exception applies only if fraud claims can be proved. Second, assuming the releasing party can sustain its burden of proving fraud, the fraud exception can be overcome by showing that the fraud claims were nevertheless within the releasing party's contemplation.

I conclude that DuPont's arguments are unpersuasive. First, whether the growers can prove fraud in the future does not influence whether they are allowed to bring a claim for fraud in the first place. DuPont argues that my Orders and the Eleventh Circuit ruling destroy an essential premise of the Delaware court's fraud exception because fraud cannot be proved. DuPont also states that its breach claims accrued as soon as Growers filed their settlement fraud actions because the Delaware court allows an exception to the release based on fraud only if fraud can be proved, and DuPont knew that the Growers would not be able to prove fraud. (Post–Hearing Brief at 7). I disagree. At the time Plaintiffs filed their fraud claims,

they did not know that the Eleventh Circuit would decide years later that these claims were meritless. It makes no sense to focus on this after-the-fact decision rather than on what the parties' intended at the time they executed the release.

Second, in order to determine the parties' intent, or what was within their contemplation, the Delaware court looked to the best indicator of this intent: the language of the settlement itself. The preamble of the settlement specifically references claims related to the use of Benlate. Comparatively, the court explained, the release language is broad and arguable ambiguous. The court interpreted the broad release language narrowly because this release followed a specific recital of subject matter. Based on this narrow interpretation, and the court's conclusion that "[a]t a minimum," DuPont had to show that the release "include[d] a specific statement of exculpatory language referencing the fraud" (*id.* at 461), DuPont could not meet its burden of showing that fraud was in the parties' contemplation. Accordingly, the court answered the certified issue, whether the release bars the fraud claims, in the negative. The Delaware court's discussion of what was in the growers' contemplation was an explanation for its ruling: because the court determined, based on the language and structure of the release, that fraud was not in the parties' contemplation, the growers could bring their fraud claims as a matter of law.[35]

Further, even if DuPont could convince a court to look outside the terms of the settlement, and even if DuPont could

prove contemplation, this proof would simply bar Plaintiffs from recovering under their fraud claims. It would not change the Delaware court's conclusion that Plaintiffs are allowed to file their fraud claims in the first place. According to the terms of the release, the fact that Growers are allowed to file in the first place means that they did not breach the agreement because the release itself defines breach as commencing, i.e., filing an action. Paragraph 5 of the release reads as follows:

A claim shall be deemed to have accrued under this agreement of indemnity immediately upon the commencement of any such action or other proceeding, and in such event, this Release may be pleaded as a full and complete defense thereto, as the basis for an abatement of or injunction against said action or other proceedings, and as the basis of a counterclaim or cross-claim for damages therein.

(*Id.* at ¶ 5). Pursuant to this language, a claim accrues "upon the commencement" of an action involving the claims extinguished by the release. If DuPont insists that fraudulent inducement was among the extinguished claims, then, according to the release itself, DuPont's cause of action for breach of the release arose at the commencement of the action for fraud.

The Delaware court, however, determined at the very least that Growers could file their fraud claims. Other courts' later determinations that Growers cannot succeed on their fraud claims because of the litigation privilege or because they cannot

---

**35.** In any event, I conclude that the record contains numerous issues of material fact, and DuPont has not shown that the growers contemplated fraud at the time of settlement. Thus, the issue of whether fraud was contemplated would proceed to a jury. As explained during oral argument, in order for a jury to resolve the contemplation issue, the jury would necessarily hear evidence of DuPont's alleged misconduct. *See infra* Background, Part III. Further, if after hearing this evidence, a jury still decided to award DuPont nominal damages, and if the issue of attorney's fees came before me, I would be permitted to consider the fact that the Eleventh Circuit made sure to sanction DuPont's alleged conduct, if proven. *See id.*

show reasonable reliance can only halt the progression of these claims, but based on Delaware law, growers were allowed to commence this action. This is so even if DuPont is correct in insisting that fraud was an extinguished claim because if fraud is included in the claims governed by the terms of the release, a claim for fraud constitutes breach upon commencement of the fraud claim. Because the commencement stage has passed, there has been no breach. Thus, whether one reads the Delaware opinion as excluding fraud from the extinguished claims, or whether it is read to allow DuPont to prove that the parties contemplated fraud, the Delaware court definitively concluded that the release does not bar Growers from filing fraud claims. Thus, Growers did not breach the release by filing the fraud claims.

### (ii) Growers' Claims Are Fraud–Related

Because the release does not bar Growers from filing their settlement fraud claims, the only remaining question is whether the growers' claims are all settlement fraud claims. I conclude that they are.

### (a) Plaintiff–Growers

DuPont refers to the First Amended Complaint filed in Case No. 98–2242 as an exemplar Plaintiff–Grower Complaint. (Statement of Material Facts ¶ 3). My own review of Plaintiff–Growers' complaints indicates that they have alleged the same thirteen counts for relief, with the exception that Plaintiff–Growers in Case Nos. 00–2771, 00–2772, and 00–2773 have omitted Count X for infliction of emotional distress, thus alleging only twelve counts. The thirteen counts are (1) Count I, fraud (2) Count II, intentional nondisclosure of material facts, (3) Count III, fraudulent inducement to settle (4) Count IV, fraud on the court (5) Count V, rescission and damages for fraud, (6) Count VI, RICO

violations, (7) Count VII, conspiracy to violate RICO, (8) Count VIII, conspiracy, (9) Count IX, abuse of process, (10) Count X, infliction of emotional distress, (11), Count XI, interference with prospective economic advantage, (12) Count XII, spoliation, and (13) Count XIII, Florida Deceptive and Unfair Trade Practices Act violations. (First Amended Complaint).

As evidenced by the exemplar First Amended Complaint, Plaintiff–Growers brought these claims as they relate to fraud, not as they relate to the use or application of Benlate. Count I alleges that DuPont knowingly made misrepresentations, causing Plaintiff–Growers to settle their claims for substantially less than the claims' true value. (*Id.* at ¶¶ 243, 247). Counts II and III allege that DuPont concealed and misrepresented material facts, causing Plaintiff–Growers to settle for less than their claims' value and causing other damages. (*Id.* at ¶¶ 249, 251, 253, 256). Count IV alleges that Plaintiff–Growers' settlements with DuPont were induced by fraudulent concealments, nondisclosures and fraud on the court. (*Id.* at ¶ 258). Based on these allegations, Plaintiff–Growers seek the difference between the settlement amount they received and the amount the settlement would have been if there had not been fraud on the court. (*Id.* at ¶ 265). Count V seeks rescission and damages for fraud. The RICO claims, Counts VI and VII, state that DuPont's alleged racketeering activities were conducted "for the purpose of defrauding the Benlate claimants including Plaintiffs herein in order to diminish the value of their claims." (*Id.* at ¶ 279). Counts VIII through XII state, "As a direct and proximate result of Defendant conduct described herein, Plaintiffs suffered financial losses, including but not limited to settling their cases for substantially less than their true value ...." (*Id.* at ¶¶ 286, 289, 292, 295, and 298). Finally, Count XIII alleges

that DuPont "fraudulently and deceptively concealed test results and field test results," resulting in damages consisting of the difference between the amount of settlement received and the amount of a fair settlement. (*Id.* at ¶¶ 302, 310). These Counts allege fraudulent misconduct on DuPont's part, resulting in a diminished value of Plaintiff–Growers' settled claims. Thus, all Plaintiff–Growers claims are fraud-related.

### (b) Ferraro Plaintiffs

Ferraro Plaintiffs' claims are settlement fraud-related. Ferraro Plaintiff Mazzoni Farms alleges two counts for relief: (1) Count I states that DuPont made misrepresentations and withheld information when it settled with Mazzoni Farms in 1994, and (2) Count II alleges the same misconduct when the parties executed a release in 1992. Jack Martin's single count for fraud is similar to Mazzoni Farm's Count I. These claims are fraud-related.

### (c) Searcy Denney

DuPont argues that Searcy Denney breached the release by filing claims in state court. DuPont uses Searcy Denney's Third Amended Complaint in the state case *Harper v. DuPont* as an example of typical Searcy Denney claims. (Statement of Material Facts ¶ 5). The Third Amended Complaint seeks relief under four counts: (1) Count I, Florida RICO violations, (2) Count II, fraud, (3) Count III, conspiracy and (4) Count IV, spoliation. (Second Raider Declaration at Exh. 3). These claims all relate to fraud in the form of concealing or making misrepresentations regarding Benlate defects. (*See id.* at ¶¶ 321 (alleging in Count I that the DuPont enterprise fraudulently transmitted false information regarding the true nature of Benlate, inducing Growers to value their claims for a fraction of their value)); 326–331 (alleging in Count II that Du-

Pont's fraud caused Growers to settle their claims for less than their value); 334 (alleging in Count III that DuPont's fraud caused Growers to settle their claims for less than their value); 338–341 (alleging in Count IV that DuPont's intentional destruction and alteration of evidence caused Growers to settle their claims for less than their value). Thus, the claims related to fraud, not to the use or application of Benlate.

### (d) Ferraro Defendants

DuPont also argues that Ferraro Defendants breached the terms of the release when they filed actions in state court. DuPont states that the First Amended Complaint filed in *Lake Ferns, Inc. v. DuPont* is typical of the Ferraro Defendants' state complaints. (Statement of Material Facts ¶ 6). The First Amended Complaint alleges the same four counts as the Searcy Denney Complaint: (1) Count I, Florida RICO violations, (2) Count II, fraud, (3) Count III, conspiracy and (4) Count IV, spoliation. (Second Raider Declaration at Exh. 5). These claims all relate to fraud in the form of concealing or making misrepresentations regarding Benlate defects. (*See id.* at ¶¶ 321) (alleging in Count I that the DuPont enterprise fraudulently transmitted false information regarding the true nature of Benlate, inducing Growers to value their claims for a fraction of their value); 326–331 (alleging in Count II that DuPont's fraud caused Growers to settle their claims for less than their value); 334 (alleging in Count III that DuPont's fraud caused Growers to settle their claims for less than their value); 338–341 (alleging in Count IV that DuPont's intentional destruction and alteration of evidence caused Growers to settle their claims for less than their value). Thus, these claims related to fraud, not to the use or application of Benlate.

*(b) The Growers did not Breach the Releases Governed by Florida Law.*

 Plaintiff–Growers in Case No. 99–2308 and Jonathan L. Moore and Patricia L. Moore d/b/a Tomoka Greens executed releases containing Florida choice of law clauses. (Statement of Material Facts ¶ 50). Accordingly, I must examine the Florida Supreme Court's opinion in *Mazzoni Farms, Inc. v. DuPont De Nemours and Company*, 761 So.2d 306 (Fla.2000) to determine whether these Growers breached their releases with DuPont. Because the Florida Supreme Court determined that the releases governed by Florida law do not bar fraud, and because the claims at issue are fraud-related, I conclude that Growers whose releases were governed by Florida law did not breach the release.

*(i) The Florida Supreme Court's Opinion in Mazzoni Farms*

In *Mazzoni Farms, Inc. v. DuPont De Nemours and Company*, 761 So.2d 306 (Fla.2000), the Supreme Court of Florida interpreted a general release between DuPont and the Ferraro Plaintiffs. *Id.* In that case, the Eleventh Circuit certified the following two questions to the Florida Supreme Court: (1) Does a choice of law provision in a settlement agreement control the disposition of a claim that the agreement was fraudulently procured even if there is no allegation that the choice-of-law provision itself was fraudulently procured? and (2) If Florida law, applies, does the release in these settlement agreements bar plaintiffs' fraudulent inducement claims? *Id.* at 307–08.

In answering the first question, the court determined that because the growers had chosen to retain the settlement money they received pursuant to the release, they had affirmed the release and were bound by its choice-of-law provision. *Id.* at 313. Mazzoni Farms and Jack Martin were thus bound by the provision in their releases providing that Delaware law applied to determine the scope and effect of the release. *Id.* at 313.

Because the remaining Ferraro Plaintiffs had executed releases with a Florida choice-of-law clause, the court examined the second certified question. *Id.* at 314. In analyzing whether the release bars fraud, the court examined the language of the release. *Id.* at 314–315. Specifically, it examined the following provision:

> DuPont is discharged from "any and all claims, actions, causes of action, including consequential damages, demands, rights, damages costs, losses, and any other liability or expense of whatsoever kind, which the undersigned ... now has or may or shall have by reason of the use or application of DU PONT BE-NOMYL products."

*Id.* at 315 (citations omitted). The court explained that although the release included the broad language "any and all claims ... of whatsoever kind," this phrase was qualified later with the statement "shall have by reason of the use of or application of [Benlate]." *Id.* Because, in the court's view, the fraudulent inducement claim did not arise from the use or application of Benlate, the seemingly broad language in the release did not bar the growers' claims. *Id.* DuPont argued that the growers' claims were entirely dependent on their use of Benlate because the misrepresentation claim concerned the value of the original claim and the damages sought were necessarily dependent on their use of Benlate. *Id.* at 315–316. The court found this argument unpersuasive because "there is an inherent disconnection between inducement into settlement and pursuit of the original claims." *Id.* at 316. Accordingly, the releases governed by Florida law do not bar fraud claims.

*(ii) Growers' Claims Are Fraud–Related*

I have already analyzed the claims of Case No. 99–2308 Plaintiff–Growers: they allege the same thirteen Counts as the other Plaintiff–Growers, which I conclude are settlement fraud-related. *See supra* Part III.A(2)(a)(ii)(a). I have also already analyzed Jonathan L. Moore and Patricia L. Moore d/b/a Tomoka Greens' claims. These Plaintiffs were among the Ferraro Defendants who filed the state court *Lake Ferns* action alleging four claims, which I determine are all settlement fraud-related. *See supra* Part III.A(2)(a)(iii)(d). Accordingly, these Growers did not breach their releases by filing their present claims.[36]

## B. Covenant Not to Sue

DuPont argues that the covenant not to sue unambiguously bars Benlate-related claims. Specifically, it refers to the language in the covenant precluding suit "based upon or in any way related to" the released claims. (Exemplar Release ¶ 3). Because the fraud claims are based upon the product liability claims, DuPont argues that the fraud claims breach the covenant not to sue. I conclude that this is not the case with respect to the releases whether they are governed by Delaware law or Florida law.

*(1) Under Delaware Law, the Covenant Not to Sue Does Not Bar the Claims*

 As DuPont admits in its Reply, it made the same argument to the Delaware Supreme Court before that court issued its opinion in *Florida Evergreen*. (Reply at 7). DuPont argues, however, that the Delaware court focused on the language of the release clause in paragraph 1 of the Release, not the clause in paragraph 3 containing the covenant not to sue. In making its arguments, DuPont distinguishes between the term "release," which it states applies only to paragraph 1's provisions and the term "Release," which DuPont argues applies to the entire settlement agreement.

The Delaware court, however, examined various provisions of the entire settlement agreement. It examined Paragraph 15, which it stated provides that the "release" shall be governed by Delaware's laws, although the provision actually states that the "Release" shall be governed by Delaware's laws. *Id.* at 459. It examined the preamble, which contained a specific recital of the subject matter of the settlement: "claims related to Plaintiff's purchase and/or use of Benlate ...." *Florida Evergreen*, 744 A.2d at 458. It contrasted this specific language with the general language of Paragraph 1:

**36.** Although DuPont does not make this argument in its summary judgment briefs, DuPont suggests in its Sur–Reply to Plaintiff–Growers' Motion to Amend that based on *Jackson v. BellSouth*, 372 F.3d 1250 (11th Cir.2004), the release bars Plaintiff–Growers' "non-fraud" claims. (Sur–Reply at 12–13). DuPont argues that in *Jackson*, the Eleventh Circuit held that a broad general release discharged numerous claims arising out of settlement fraud, including those claims alleging RICO violations. (*Id.*). DuPont mischaracterizes the Eleventh Circuit's holding. In that case, the plaintiffs argued that their claims should not be barred by a release which was fraudulently obtained. *Jackson*, 372 F.3d at 1278–79. The court explained that because plaintiffs had opted to retain the settlement money, they could not void the terms of the release, even if they were fraudulently obtained. *Id.* (quoting *Mazzoni Farms* 761 So.2d at 313). The court did not consider the argument that the plaintiffs' claims, even those alleging RICO violations, were settlement fraud-related. Thus, the court did not opine on whether claims arising out of settlement fraud were barred in the first place. In this case, however, I conclude that the claims are settlement-fraud related and thus not barred by the release.

Plaintiff hereby releases Defendant from any and all causes of action, claims, demands, actions, obligations, damages, or liability, whether known or unknown, that Plaintiff ever had, now has, or may hereafter have against Defendant, by reason of any fact or matter whatsoever, existing or occurring at any time up to and including the date this Release is signed (including, but not limited to, the claims asserted and sought to be asserted in this action).

*Id.* at 459. The court then explained that "Delaware law is clear that words of general application used in a release 'which generally follow a specific recital of the subject matter concerned are not to be given their broadest significance but will be restricted to the particular matter referred to in the recital.'" *Id.* at 460 (quotation omitted). Based on this law, the court concluded "that the absence of a specific reference to the actionable fraud limits the scope of the general release in this case." *Id.* at 462.

DuPont urges me to interpret the covenant not to sue differently despite the fact that the covenant is part of the settlement to be governed by Delaware law and despite the fact that the Delaware Supreme Court concluded that the release did not bar fraud claims after hearing DuPont's same argument. The covenant not to sue, however, is included in the same settlement agreement that contains the same preamble consisting of a specific recital of the subject matter. In contrast, the covenant not to sue is more general:

Plaintiff covenants that Plaintiff will not commence, prosecute, or permit to be commenced or prosecuted against Defendant any action or other proceeding based upon or in any way related to any cause of action, claims, demands, obligations, damages, or liabilities which are the subject of this Release.

(Exemplar Settlement ¶ 3). The Delaware Supreme Court has already stated that words of general application following a specific recital of subject matter will be restricted to the particular matter in the recital. *Florida Evergreen,* 744 A.2d at 460. The court has also stated that the absence of a specific reference to the actionable fraud limits the scope of the general release. *Id.* at 462. Thus, even if the Delaware court did not determine this issue when it concluded, based upon the language of various portions of the settlement, that Plaintiffs' fraud claims were not barred, I conclude that based on the Delaware decision, the covenant not to sue is restricted to the specific recital of subject matter that precedes it and that the absence of a specific reference to fraud limits the scope of the covenant to non-fraud claims. Thus, Growers did not breach the covenants in the settlements governed by Delaware law.

### (2) Under Florida Law, the Covenant Not to Sue Does Not Bar the Claims

Similarly, the Florida Supreme Court contrasted the broad and specific language in the settlement agreement. *Mazzoni Farms,* 761 So.2d at 314 (comparing the phrase "by reason of the use or application of DuPont Benomyl products" with the broad language of the release). The court then rejected DuPont's argument that "the nurseries' claims are entirely dependent on their use of Benlate because the misrepresentation claim concerns the value of the original claim and the damages sought are necessarily dependent on their use of Benlate." *Id.* at 315–16. The court explained that there is an "inherent disconnection between inducement into settlement and pursuit of the original claims." *Id.* at 316. Thus, the court concluded that the release did not bar fraud claims. *Id.*

I am bound by this decision in construing the covenant not to sue in the settle-

ment agreement governed by Florida law. This agreement refers in the preamble to "claims related to Plaintiffs' use of Benlate fungicide." (Second Raider Declaration at Exh. 157). The covenant not to sue is broader: "Plaintiffs covenant that Plaintiffs will not commence ... against Defendant any action or other proceeding based upon or in any way related to any causes of action ... which are the subject of this Release." (*Id.* at ¶ 3). I note that despite the Florida court's decision to limit the release to the specific language in the provision, DuPont makes the very argument that the court rejected. DuPont states:

> The Claimants' current "settlement fraud" claims exist only because of, and are expressly based on, the underlying claims. Indeed, in their current fraud allegations against DuPont, they repeatedly describe their alleged injuries as "settling their Benlate claims for less than their true value." This is sufficient to show that all of Claimants' present claims are covered by the covenant.

(Memorandum in Support of Motion for Summary Judgment at 32). After the Florida Supreme Court rejected this argument, it concluded that there is an inherent disconnection between inducement into settlement and product liability claims. Accordingly, I follow this decision and conclude that under Florida law, the covenant does not bar Growers' fraud claims.

## C. Growers' Cross–Motions for Summary Judgment

Plaintiff–Growers, Ferraro Plaintiffs, and Searcy Denney each filed Cross–Motions for Summary Judgment as to DuPont's breach of settlement claims. Because neither the release nor the covenant not to sue bars the growers from filing the fraud claims, filing these claims did not breach the agreements as a matter of law. Thus, the growers' Cross–Motions for Summary Judgment as to breach of settlement are granted.

DuPont does not have any remaining claims. Although it initially alleged a claim for restitution, and in some cases, claims for other forms of equitable relief as well, during oral argument, DuPont abandoned all its equitable claims.[37] (Transcript at 5). When asked if it was still seeking equitable relief in the form of asking me to exercise my equitable power to take the settlement money DuPont paid Growers and return it to DuPont, DuPont answered in the negative. (Transcript at 5).

## IV. Ferraro Defendants' Motions to Dismiss

Ferraro Defendants filed Motions to Dismiss and Memoranda of Law in Support of their Motions on January 27, 2004. (Case No. 99–7217, DE # s 345, 346; Case No. 99–7228, DE # s 344, 345; Case No. 99–7229, DE # s 344, 345). These Motions

**37.** In any event, I note that equitable claims such as restitution, based on the idea that Growers would be unjustly enriched if they retained the settlement money, cannot exist if the subject matter of the claim is covered by a valid and enforceable contract. *In re Managed Care Litigation,* 185 F.Supp.2d 1310, 1337 (S.D.Fla.2002) (explaining that under Florida law, an unjust enrichment claim can exist only if the subject matter of that claim is not covered by a valid and enforceable contract); *Resource Ventures, Inc. v. Resources Management, Int'l, Inc.,* 42 F.Supp.2d 423, 439 (D.Del.1999) (explaining that under Delaware law, plaintiff could not pursue an unjust enrichment theory because a valid contract existed). In this case, Growers executed settlement agreements agreeing not to bring Benlate-related claims against Dupont in exchange for money. This agreement, which the parties do not dispute is valid and enforceable, covers the subject matter of extinguishing claims in exchange for settlement money. Thus, DuPont cannot allege restitution, based on an unjust enrichment theory, regarding this same subject matter.

are substantially similar to one another. DuPont filed a combined Opposition to the three Motions to Dismiss (Case No. 99–7217, DE # 357) on March 1, 2004. Ferraro Defendants filed a combined Reply (Case No. 99–7217, DE # 362) on March 22, 2004. For the reasons stated below, the Motions to Dismiss are granted.

DuPont's First Amended Complaints ("FACs") (Case No. 99–7217, DE # 324, Case No. 99–7228, DE # 323, Case No. 99–7229, DE # 323, all filed December 9, 2003) set forth the background of these cases. The Complaints state that DuPont and Ferraro Defendants were parties to prior lawsuits and other disputes involving Benlate. (DuPont's Complaints ¶ A). These disputes were resolved by settlement agreements executed in 1993 and 1994. (*Id.*). The settlement agreements included general releases and covenants not to sue. (*Id.*). Nevertheless, in April 1999, Defendants sued DuPont in the Circuit Court of the Seventeenth Judicial District. (*Id.* at ¶¶ B, C). Based on these factual allegations, DuPont seeks relief under two Counts: (1) Count I for breach of settlement documents and the General Releases, and (2) Count II for restitution.

I have already determined that Ferraro Defendants did not breach the settlement agreements by filing their state court claims. *See supra* Part III. This is so whether the settlement agreements are construed under Delaware law, as is the case with all but one Ferraro Defendant, or under Florida law, as is the case with Jonathan L. Moore and Patricia L. Moore, doing business as Tomoka Greens International, in Case No. 99–7229. *Id.* As a result, DuPont can prove no set of facts that would entitle it to relief under its breach of contract claim. Further, as I explain in Part III, *supra,* DuPont has abandoned its equitable relief claims. (Transcript at 5). In any event, because DuPont has alleged the existence of a valid and enforceable agreement, it cannot proceed on its restitution claim. *See supra* Part III. Thus, I grant Ferraro Defendants' Motions to Dismiss, concluding that dismissal is the necessary result of my earlier conclusions. As DuPont can prove no set of facts entitling it to relief on its claims, I dismiss its Complaints with prejudice.[38]

In dismissing DuPont's Complaints for this reason, I acknowledge that I proceed on a different basis than those put forth by Defendants, who argue: (1) that DuPont's First Amended Complaint is a compulsory counterclaim to a state claim and therefore should be dismissed, (2) that Defendants' settlement fraud claims in state court bar DuPont's action, (3) that the doctrine of unclean hands bars this action, and (4) that venue is improper in Case Nos. 99–7228 and 99–7229. To the extent that this constitutes a *sua sponte* dismissal of Plaintiff's complaint under Rule 12(b)(6), I conclude that DuPont, through briefing its opposition to the Motions to Dismiss, its Motion for Summary Judgment as to breach of settlement, and all the other issues in this case, has been provided with an adequate opportunity to address the legal issues underlying my finding. Accordingly, a *sua sponte* determination of the sufficiency of DuPont's claims, and dismissal thereof, is appropriate under these circumstances. *See, e.g., Cicippio–Puleo v. Islamic Republic of Iran,* 353 F.3d 1024, 1031–32

---

38. The Eleventh Circuit has explained that "[a] district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. America Corp.,* 314 F.3d 541, 542 (11th Cir. 2002). DuPont is represented by counsel and has not requested leave to amend. Accordingly, DuPont's Complaints are dismissed with prejudice.

(D.C.Cir.2004) (upholding the district court's *sua sponte* dismissal under Rule 12(b)(6) of plaintiffs' complaint where "it appears beyond doubt that the plaintiffs can prove no set of facts that would entitle them to relief"); *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir.1991) (holding that "a district court *sua sponte* may dismiss a complaint under Rule 12(b)(6)," as long as the dismissal does not precede service of process, "when it is patently obvious the plaintiff could not prevail based on the facts alleged in the complaint"). While dismissing these complaints for the reasons explained above, I otherwise reject the arguments advanced by Defendants' counsel in its motions to dismiss.[39]

## A. DuPont's Claims Are Not Compulsory Counterclaims.

■ Ferraro Defendants' first argument for dismissal is that DuPont's claims should be dismissed because they should have been asserted as compulsory counterclaims in the Florida cases. DuPont, however, has already asserted these claims as compulsory counterclaims in the Florida cases, in addition to bringing these separate federal actions. Thus, there are parallel proceedings in state and federal court, and I must decide whether the state court proceedings warrant dismissal here. DuPont argues in its Opposition, based on *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) and its progeny, that dismissal is inappropriate. *Id.; see also Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927 (1983) (exercising jurisdiction despite parallel, first-filed state court proceedings because the *Colorado River* factors counseled against dismissal). In their Reply, Ferraro Defendants focus exclusively on the *Colorado*

*River* factors to argue their position. Accordingly, I will analyze these factors in discussing whether the state court proceedings warrant dismissal of this action.

*Colorado River* began with the proposition that parallel state court proceedings do not automatically support dismissal of federal actions because of "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817–818, 96 S.Ct. 1246. The Court continued as follows:

> [g]iven this obligation, and the absence of weightier considerations of constitutional adjudication and state-federal relations, the circumstances permitting the dismissal of a federal suit due to the presence of concurrent state proceedings for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention. The former circumstances, though exceptional, do nevertheless exist.

*Id.* The Court then analyzed the following factors in assessing whether to assume concurrent state-federal litigation: (1) which court first assumed jurisdiction over the property involved, (2) the inconvenience of the federal forum, (3) the desirability of avoiding piecemeal litigation, and (4) the order in which jurisdiction was obtained in the concurrent forums. *Id.* at 818, 96 S.Ct. at 1246–1247. The Court determined that the purpose behind the statute at issue was to avoid piecemeal litigation. *Id.* at 819, 96 S.Ct. at 1247. Accordingly, the Court concluded that the second factor was most important, and that dismissal was appropriate. *Id.*

The Court further discussed the *Colorado River* factors in *Moses H. Cone*. *Moses*

---

**39.** Despite my conclusion that dismissal is warranted on other grounds, I address Ferra-

ro Defendants' arguments for dismissal in the event that further review is required.

*H. Cone*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765. The relevant facts of *Moses H. Cone* are as follows. The parties had entered into a contract that included a clause providing for binding arbitration. *Id.* When a dispute arose, petitioner filed a state court action seeking a declaratory judgment that it did not have to pay certain costs under the contract. *Id.* Respondent then filed a federal action seeking an order compelling arbitration. *Id.*

Before turning to the *Colorado River* factors, the Court noted that the vexatious or reactive nature of either the federal or state litigation may influence the decision to dismiss. *Id.* at 17, 103 S.Ct. at 937. The Court concluded that even if the petitioner had acted in good faith when filing the state court action, the remaining factors, discussed below, warranted concurrent federal jurisdiction. *Id.*

In analyzing the *Colorado River* factors, the Court first stated that there was no assumption of jurisdiction over any res or property, nor was there any contention that the federal forum was any less convenient geographically than the state forum. *Id.* at 19, 103 S.Ct. at 939. Thus, the Court did not assess those factors. *Id.* The Court analyzed the desirability of avoiding piecemeal litigation factor and determined that there was no danger of piecemeal litigation there. *Id.* Next, the Court examined the order in which the concurrent tribunals obtained and exercised jurisdiction. *Id.* at 21, 103 S.Ct. at 939–940. Petitioner argued that this factor weighed in favor of dismissal because the state court action was filed first. *Id.* The Court pointed out that "[a]n indispensable element of [respondent's] cause of action under § 4 for an arbitration order is the [petitioner's] refusal to arbitrate." *Id.* Further, [t]hat refusal did not occur until less than a day before the [petitioner] filed its state suit. Thus, [petitioner] simply had no reasonable opportu-

nity to file its § 4 petition first." *Id.* In any event, the Court stated that petitioner's priority argument gave "too mechanical a reading to the 'priority' element of the *Colorado River* balance.'" *Id.* The Court further explained that "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Id.* In that case, the federal proceedings were more advanced than the state case. *Id.* at 22, 103 S.Ct. at 940. Thus, even though the state action was filed first, this factor weighed against dismissal.

In addition to the four factors expressly used in *Colorado River*, the Court analyzed two additional factors: (1) whether federal law provides a rule of decision on the merits, and (2) whether the state court proceeding would protect the respondent's rights. *Id.* at 23, 26, 103 S.Ct. at 941, 942. In assessing the first of these factors, the Court stated the following:

> we emphasize that our task in cases such is this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist "exceptional" circumstances, the "clearest of justifications," that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction.

*Id.* at 25–26, 103 S.Ct. at 942 (emphasis in original). Further, "[a]lthough in some rare circumstances the presence of state-law issues may weigh in favor of that surrender .... the presence of federal-law issues must always be a major consideration in weighing against surrender." *Id.* Because that case involved the Arbitration Act, this factor weighed against dismissal. *Id.* The Court also concluded that the last factor disfavored dismissal. *Id.*

Thus, the *Colorado River/Moses H. Cone* factors are (1) jurisdiction over a

"res," (2) inconvenience of the federal forum, (3) the desirability of avoiding piecemeal litigation, (4) the order in which jurisdiction was obtained by the concurrent forums and the progression of the cases, (5) whether federal law would provide the rule of the decision on the merits, (6) the adequacy of the state court proceeding to protect the federal court plaintiff's rights, and (7) the vexatious or reactive nature of either the federal or state litigation. *Colorado River,* 424 U.S. at 818–819, 96 S.Ct. 1236; *Moses H. Cone,* 460 U.S. at 24–27, 103 S.Ct. 927; *see also Noonan South, Inc. v. County of Volusia,* 841 F.2d 380 (11th Cir.1988) (discussing first six factors). There is no "res" in this case. Accordingly, I will examine the remaining six factors.

### (1) Inconvenience of the Federal Forum

In this case, the Southern District of Florida is a convenient federal forum for Ferraro Defendants. They filed their state action in Broward County, which is in this judicial district. 28 U.S.C. § 89(c). Further, although Ferraro Defendants argue that this courthouse is 45 minutes from the Broward County courthouse, the Eleventh Circuit has held that such a small distance is "negligible" for purposes of *Colorado River. See Noonan South, Inc. v. County of Volusia,* 841 F.2d 380, 382 (11th Cir.1988) (concluding that a distance of 50 miles is negligible for purposes of analyzing the inconvenience of the federal forum factor of the *Colorado River* test). Finally, Ferraro Defendants' attorneys are located in Miami and practice in this district.

### (2) Desirability of Avoiding Piecemeal Litigation

Dismissing these cases will not avoid piecemeal litigation. Regardless of the disposition of this Motion to Dismiss, I have twenty-six other DuPont cases before me. I am necessarily resolving the same

settlement fraud issues that are involved in Ferraro Defendants' cases and that led to my earlier Orders in *Florida Evergreen I* and *II* and the Eleventh Circuit's controlling decision in *Green Leaf.* Thus, the factor the *Colorado River* Court found decisive weighs against dismissal in this case. *See Colorado River,* 424 U.S. at 819, 96 S.Ct. at 1247 (concluding that avoiding piecemeal litigation was the most important factor in that case).

### (3) Order of Filing and the Progression of the Cases

The third factor examines the order of filing and the progression of each case. These cases are similar to *Moses H. Cone* in the sense that the state court action was necessarily filed first. In that case, respondent's claim for compelling arbitration did not arise until the petitioner filed a state court action instead of arbitrating. In this case, the breach of contract action did not arise until Ferraro Defendants allegedly breached provisions of that contract by filing actions against DuPont in state court. The state court action was filed in April 1999 (FACs ¶¶ B,C), while the federal actions were filed on September 22, 1999 (Case Nos. 99–7217, 99–7228, 99–7229, DE #1, filed September 22, 1999).

Further, the state case has not progressed to a more advanced stage than the proceedings here. Ferraro Defendants state in their Reply that the state court has set a trial date for two lead cases. (Case No. 99–7217, Reply at 4). In this federal action, however, questions have been certified and answered by two state courts, and two decisions have been rendered on the merits in the lead case and have been affirmed by the Eleventh Circuit. Further, this Omnibus Order disposes of all the remaining claims and closes this case. Thus, the comparative progression of the cases does not justify dismissal.

*(4) Whether Federal Law Would Provide a Rule of the Decision on the Merits*

When assessing this factor in *Moses H. Cone,* the Supreme Court stated the following:

> we emphasize that our task in cases such is this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist "exceptional" circumstances, the "clearest of justifications," that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction.

*Id.* at 25–26, 103 S.Ct. at 942 (emphasis in original). Further, "[a]lthough in some rare circumstances the presence of state-law issues may weigh in favor of that surrender .... the presence of federal-law issues must always be a major consideration in weighing against surrender." *Id.*

Thus, even though these cases involve tort and breach of contract claims, which are governed by state law, this factor does not weigh heavily in favor of dismissal. Further, regardless of whether I grant dismissal, I had to analyze the same state law issues in connection with the other DuPont cases pending before me.

*(5) Adequacy of the State Court Proceeding to Protect the Federal Court Plaintiff's Rights*

Although this factor appears to focus only on the adequacy of the state forum, the Eleventh Circuit has examined both the federal and state fora in assessing this factor. The court has stated, " '[The] fact that both forums are adequate to protect the parties' rights merely renders this factor neutral on the question of whether the federal action should be dismissed.' " *American Bankers,* 891 F.2d 882, 886 (11th Cir.1990) (citation omitted). Just because a party's rights are protected in state court does not deprive it of its right to the federal forum. *Id.* In this case, the parties agree that both fora are adequate to protect their rights. Thus, this factor does not weigh for or against dismissal.

*(6) Vexatious or Reactive Nature of Federal or State Litigation*

Ferraro Defendants argue that because DuPont has filed cases here that are identical to the state cases, the federal cases are "clearly DuPont's reactive effort to shop the cases outside of the Broward County forum." (Case No. 99–7217, Reply at 5). They cite *Bosdorf v. Lamar Beach,* 79 F.Supp.2d 1337 (S.D.Fla.1999) for support. In that case, the plaintiff had filed two other actions, one of which was a state court action, and had received adverse rulings before filing the federal action before the court. *Id.* Thus, the court stated that the action was filed before it "in an attempt to avoid adverse or unfavorable rulings dealt by other jurisdictions." *Id.* at 1346.

Ferraro Defendants' argument has no merit. The very nature of parallel proceedings is that the state and federal court actions are substantially similar. Further, the federal action was necessarily in response to the state court action: DuPont's breach of contract claim would not have arisen unless Ferraro Defendants allegedly breached the contract first by suing DuPont in state court. Finally, *Bosdorf* does not apply; there is no evidence that DuPont filed this action elsewhere first, received adverse rulings, and then filed the case here.

*(7) Conclusion: Dismissal Is Not Warranted under Colorado River.*

In summary, I conclude that dismissal based on *Colorado River* is inappropriate. Because there is no res involved, the first factor does not apply. Second, the federal forum is just as convenient as the state forum. Third, dismissal will not avoid piecemeal litigation because I have resolved these claims in the other pending DuPont cases. Fourth, this case has pro-

gressed to an advanced stage; I have made two decisions on the merits in the lead case which have been affirmed by the Eleventh Circuit. Fifth, although state law issues are involved, I had to resolve these state law issues in the other cases comprising this consolidated action. Sixth, both the federal and state fora are adequate, so the adequacy of the forum factor does not affect my analysis. Finally, DuPont did not bring this action as a vexatious or reactive measure; rather, this action necessarily arose out of the state claim. Accordingly, there are no exceptional circumstances in this case that lead me to surrender "my virtually unflagging obligation" to exercise jurisdiction under *Colorado River. Colorado River*, 424 U.S. at 817–818, 96 S.Ct. at 1246 (stating that federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them").

## B. Defendants' Settlement Fraud Claims In State Court Do Not Bar This Action.

■ Ferraro Defendants next argue that because DuPont committed fraud, and because there is a sufficient basis for a decree of rescission, the fraud vitiates the terms of the contract and bars DuPont's claims. In the alternative, Ferraro Defendants argue that if the fraud issue has not been resolved, then DuPont's claims are not ripe for review. In support of this latter argument, Ferraro Defendants argue that the determination of the fraud is being set for trial in state court.

Neither argument has merit. First, I cannot accept as true Ferraro Defendants' argument that DuPont has committed fraud because at this motion to dismiss stage, I am required to accept DuPont's allegations in its Complaints as true, and of course DuPont does not admit that it has committed fraud in its Complaints.

■ Second, even if fraudulent inducement were admitted, "[i]t is axiomatic that fraudulent inducement renders a contract *voidable, not void." Mazzoni Farms, Inc. v. DuPont*, 761 So.2d 306, 313 (Fla.2000) (emphasis added) (citations omitted). The court explained as follows:

> Consistent with the majority view, Florida law provides for an election of remedies in fraudulent inducement cases: rescission, whereby the party repudiates the transaction, or damages, whereby the party ratifies the contract. A prerequisite to rescission is placing the other party in status quo. As the court in Bass v. Farish, 616 So.2d 1146, 1147 (Fla. 4th DCA 1993), noted, "Generally, a contract will not be rescinded even for fraud when it is not possible for the opposing party to be put back into his pre-agreement status." Moreover, a party's right to rescind is subject to waiver if he retains the benefits of a contract after discovering the grounds for rescission.
>
> A damages claim, by contrast, affirms the contract, and thus ratifies the terms of the agreement. This principle ensures that a party who "accepts the proceeds and benefits of a contract" remains subject to "the burdens the contract places upon him."
>
> As previously stated, the necessary precondition for rescission is tender of the benefits received under the contract. In effect, the nurseries elected to affirm the contract by not returning the settlement proceeds. As a result, they are bound by the terms of the contract . . . .

*Id.* (citations omitted). According to DuPont's First Amended Complaints, Ferraro Defendants, like the plaintiffs in *Mazzoni Farms*, have retained their settlement proceeds and have affirmed and ratified the settlement contracts, and as a result, they are bound by the terms of the agree-

ments. (Case No. 99–7217, Complaint ¶ 40 (stating that Defendants did not tender the settlement amounts back to DuPont); Case Nos. 99–7228, 99–7229, ¶ 34 (same)). Thus, even if they did have a fraudulent inducement claim pending before me, which they do not, they would be proceeding under a damages claim, not a rescission one. Accordingly, the case on which Ferraro Defendants rely, *Oceanic Villas, Inc. v. Godson,* 148 Fla. 454, 4 So.2d 689 (1941), is not on point because it involves rescission. *Id.* at 459, 4 So.2d 689 ("We recognize the rule to be that fraud in the procurement of a contract is ground for *rescission and cancellation* of a contract . . . .") (emphasis added).

Further, because there has been no rescission in this case, and the contract accordingly cannot be vitiated even if fraud is proved, there is no need to wait for a ruling on the fraud issue. Thus, the case Ferraro Defendants cite on the ripeness issue, *D & M Jupiter, Inc. v. Friedopfer,* 853 So.2d 485 (Fla. 4th DCA 2003), does not apply. *Id.* at 488 (citing *Oceanic Villas'* language on vitiating terms of contracts because of possible fraud and rescission).

In summary, Ferraro Defendants have allegedly retained the benefit they bargained for under the contract rather than seeking rescission. Thus, fraud does not vitiate the terms of the contract.

## C. The Doctrine of Unclean Hands Does Not Bar This Action.

Ferraro Defendants' third argument for dismissal is that the doctrine of unclean hands bars this action. They state that because "[t]here is no dispute that DuPont engaged in fraudulent activity during the pendency of the underlying claims" (Motions at 8–9), DuPont should not be permitted to bring this action.

Ferraro Defendants' arguments again incorrectly suggest that fraud has been proved. On a Rule 12(b)(6) motion, I am limited to examining the four corners of the complaint, and I must accept all factual allegations in the complaint as true. *See supra* Legal Standard, Part III. DuPont does *not* admit to fraud in any of its First Amended Complaints, contrary to Ferraro Defendants' arguments. Further, Ferraro Defendants have not even asserted the defense of unclean hands. It is inappropriate to dismiss DuPont's case for committing fraud when fraud has not even been alleged, much less proved. Accordingly, the doctrine of unclean hands does not warrant dismissal.

## D. Venue Is Proper.

Finally, venue is proper in this Court. Ferraro Defendants in Case Nos. 99–7228 and 99–7229 argue that this case should be dismissed because they reside outside this judicial district. Defendants, however, fail to take into account that venue can be established even if they do no reside in this judicial district.

> Venue in diversity actions is proper in any of the following judicial districts: (1) a judicial district where any defendant resides, if all defendants reside in the same State; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced.

28 U.S.C. § 1391(a). The Eleventh Circuit discussed the venue statute in *Jenkins Brick Co. v. Bremer,* 321 F.3d 1366 (11th Cir.2003). *Id.* Specifically, it examined the phrase "a substantial part of the events or omissions giving rise to the claim" and determined that in the breach of contract action before it, the "most important[ ]"

event giving rise to the claim was where the contract was breached. *Id.* at 1372.

■ In this case, the Complaints have sufficiently alleged venue under Section 1391(a)(2) because a substantial part of the events giving rise to DuPont's claims occurred in this judicial district. DuPont brought these cases because Ferraro Defendants' state court actions allegedly breached the 1993 and 1994 settlement agreements between the parties. (Case Nos. 99–7228 and 99–7229, Complaints ¶¶ B, C). The alleged breach, i.e., the filing of the state court actions, occurred in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida (*Id.*), and Broward County is within this judicial district (28 U.S.C. § 89(c)). Thus, "a substantial part of the events or omissions giving rise to the claim occurred" in this judicial district, and venue is proper.

Although Ferraro Defendants fail to raise meritorious grounds for dismissal, dismissal is appropriate because I conclude as a matter of law that DuPont cannot state a claim for breach of contract based on the allegations in its First Amended Complaints. Accordingly, these Complaints are dismissed, and Ferraro Defendants' Motions to Dismiss are granted.

## CONCLUSION

Based on the foregoing, it is hereby ORDERED AND ADJUDGED:

1. Plaintiff–Growers' Motion to Amend (DE # 406) is DENIED.

2. Ferraro Plaintiffs' Motion to Amend (Case No. 97–0059, DE # 325) is DENIED.

3. DuPont's Motion for Summary Judgment as to all settlement fraud claims (DE # 416) is GRANTED, and judgment is entered in DuPont's favor on all Plaintiff–Growers' and Ferraro Plaintiffs' claims.

4. DuPont's Motion for Summary Judgment as to breach of settlement (DE # 418) is DENIED.

5. Plaintiff–Growers Cross–Motion for Summary Judgment (DE # 445) is GRANTED, and judgment is entered in Plaintiff–Growers' favor as to all DuPont's counterclaims and defenses.

6. Ferraro Plaintiffs' Cross–Motion for Summary Judgment (DE # 453) is GRANTED, and judgment is entered in Ferraro Plaintiffs' favor as to all DuPont's counterclaims and defenses.

7. Searcy Denney's Cross–Motion for Summary Judgment (DE # 436) is GRANTED, and judgment is entered in Searcy Denney's favor as to all DuPont's counterclaims and defenses.

8. Ferraro Defendants' Motions to Dismiss (Case No. 99–2717, DE # 345; Case No. 99–7228, DE # 344; Case No. 99–7229, DE # 344) DuPont's First Amended Complaints is GRANTED. The First Amended Complaints are DISMISSED WITH PREJUDICE.

9. The cases comprising this consolidated action are CLOSED and all pending motions, including Searcy Denney's Motion to Amend Answer (Case No. 99–7038, DE # 432), DuPont's Motion for Summary Judgment against Defendant DeLuca (Case No. 99–7217, DE # 366), DuPont's Motion to Strike Ferraro Defendants' Reply (Case No. 99–7217, DE # 412), and DuPont's Emergency Motion for Final Order (DE # 475), are DENIED AS MOOT. I will enter separate Final Judgment Orders in the cases comprising this action.

10. Lead counsel (*see* Plaintiff's Designation of Lead Counsel, DE # 109, filed June 2, 2000; Defendant's Designation of Lead Counsel, DE # 110, filed June 2, 2000) shall be responsible for distributing this Order via telefax to all counsel of record.

*APPENDIX I: TABLE OF CONTENTS*

**BACKGROUND**

I. *Florida Evergreen I* and *II* and *Green Leaf*

II. Pending Motions

A. Plaintiff–Growers: Background and Pending Motions

B. Ferraro Plaintiffs: Background and Pending Motions

C. Searcy Denney Growers: Background and Pending Motions

D. Ferraro Defendants: Background and Pending Motions

III. Oral Argument

**LEGAL STANDARD**

I. Motions to Amend

II. Motions for Summary Judgment

II. Motions to Dismiss

**ANALYSIS**

I. Plaintiff–Growers' and Ferraro Plaintiffs' Motion to Amend

A. Plaintiff–Growers' Motion to Amend

*(1) Timeliness*

*(2) Futility*

 *(a) General Factual Background*

 *(b) Florida RICO Counts*

 *(i) Law of the Case Doctrine*

 *(ii) Enterprise*

 *(iii) Reasonable Reliance: Organized and Communications Fraud and Mail and Wire Fraud*

 *(iv) Indirect Injury*

 *(v) Litigation Immunity*

 *(vi) Rules for Pleading RICO Claims and Fraud Claims*

 *(vii) Conclusion*

 *(c) Remaining Counts*

 *(i) Litigation Privilege: Counts III, IV, V, VII, and VIII*

 *(ii) Reasonable Reliance: Counts III, IV, and V*

 *(iii) Fraud on the Court: Count IV*

 *(iv) Spoliation: Count IX*

 *(v) Federal RICO Claims: Counts X and XI*

 *(3) Conclusion*

B. Ferraro Plaintiffs' Motion to Amend

*(1) Timeliness*

*(2) Futility*

II. DuPont's Motion for Summary Judgment as to Settlement Fraud

A. Plaintiff–Growers' Claims

*(1) Litigation Immunity: Counts I, II, III, V, VIII, IX, X, XI, and XIII*

*(2) Reasonable Reliance: Counts I, II, III, and V*

*(3) RICO Claims: Reasonable Reliance and Direct Injury*

 *(a) Reasonable Reliance*

 *(b) Direct Injury*

*(4) Spoliation: Count XII*

*(5) Fraud on the Court: Counts IV*

B. Ferraro Plaintiffs' Claims

*(1) Factual Differences in Ferraro Plaintiffs' Cases*

*(2) Ferraro Plaintiffs' Count I: Alleged Fraud in Connection with May 1994 Settlements*

*(3) Mazzoni Farms' Count II: Allegations of Fraud in Connection with 1992 Release*

III. DuPont's Motion for Summary Judgment on Issue of Breach of Settlement Agreement and Growers' Cross–Motions for Summary Judgment

A. Release Provision

*(1) Parties' Arguments*

*(2) Analysis*

 *(a) Growers Did Not Breach the Releases Governed by Delaware Law*

*(i) The Releases Do Not Bar Fraud Claims*

*(a) The Eleventh Circuit's Discussion of the Delaware Opinion*

*(b) The Delaware Supreme Court Ruling*

*(ii) Growers' Claims Are Fraud–Related*

*(a) Plaintiff–Growers*

*(b) Ferraro Plaintiffs*

*(c) Searcy Denney*

*(d) Ferraro Defendants*

*(b) Growers Did Not Breach the Releases Governed by Florida Law*

*(i) The Florida Supreme Court's Opinion in Mazzoni Farms*

*(ii) Growers' Claims Are Fraud–Related*

**B. Covenant Not to Sue**

*(1) Under Delaware Law, the Covenant Does Not Bar the Claims*

*(2) Under Florida Law, the Covenant Does Not Bar the Claims*

**C. Cross–Motions for Summary Judgment**

**IV. Ferraro Defendants' Motions to Dismiss**

**A. DuPont's Claims Are Not Compulsory Counterclaims.**

*(1) Inconvenience of the Federal Forum*

*(2) Desirability of Avoiding Piecemeal Litigation*

*(3) Order of Filing and Progression of the Cases*

*(4) Whether Federal Law Would Provide a Rule of the Decision on the Merits*

*(5) Adequacy of the State Court Proceeding to Protect the Federal Court Plaintiff's Rights*

*(6) Vexatious or Reactive Nature of Federal or State Litigation*

**B. Defendants' Settlement Fraud Claims in State Court Do Not Bar This Action.**

**C. The Doctrine of Unclean Hands Does Not Bar This Action.**

**D. Venue Is Proper.**